[No. 5400–1. Division One. May 30, 1978.]

RICHARD SIMS, *Appellant,* v. KIRO, INC., *Respondent.*

230

*McMullen, Brooke, Knapp & Alexander* and *Robert E. Brooke,* for appellant.

*Preston, Thorgrimson, Ellis, Holman & Fletcher* and *Gordon G. Conger,* for respondent.

CALLOW, J.—Richard Sims operated a retail business at the Seattle Center known as the "Bicentennial Shop" which specialized in souvenirs of the 1976 bicentennial celebration. The shop was in the Seattle Center International Bazaar located in the basement of the Food Circus building.

On January 2, 1976, KIRO–TV went to the Seattle Center and video–taped background for a news feature. A short segment was taped depicting a newsman reporting from the main floor of the Food Circus. Thereafter, closeup shots of bicentennial merchandise on display in the store were video tape recorded. These closeup shots, by themselves, did not identify Sims' shop. Neither Sims nor the outside of his shop was pictured. The World's Fair clock on display at the Seattle Center was video–taped to close the background segment.

The video tape described above was used as background for the following commentary:

After only three or four years of concentrated advance publicity it is finally our Nation's Bicentennial Year. It is the sort of thing you can predict fairly accurately. After all, if you can't trust your calendar, who can you trust? And it certainly hasn't caught our Nation's spirit of good old American free enterprise napping.

About six or eight months ago, I bought a radiometer—you know, one of those little things with the alternating black and white paddles that spins when the sun

shines on it. Well, it isn't likely to wear out in this climate! But what really impressed me about it was the piece of paper attached to it—it was red, white and blue and marked my radiometer as a genuine Bicentennial item. After I had torn it to shreds and burned it, I started looking around at all the other Bicentennial merchandise.

Do the same and you will find that some of it has been on sale for four years or more. Probably the most tasteless is the Spirit of '76 casket, but the offerings range from Liberty Bell booze bottle, through red–white–and–blue telephones, to Bicentennial locomotives for your electric train.

Congress created the American Revolution Bicentennial Administration to manage our official National Celebration and it's licensing products—none genuine without this mark, royalties to be divided up among the various state and territorial observances. That's led to bootleg products with a counterfeit seal and thoughts of prosecution. The original semi–official organization is the U. S. Bicentennial Society, made up of historian types who saw the commercial explosion coming back in 1971 and has since been waging a mostly ineffective campaign against it while licensing products itself.

There is also the Peoples Bicentennial Commission. They call it the "Buy–centennial," b–u–y, and they're afraid all the commercial hoopla is going to turn people off the genuine 200th Anniversary events. They could be right. The organizations are arguing among themselves over which has the right to peddle official souvenirs. Whatever, nobody is being forced to buy any of it. Some of the manufacturers are giving up and going back to their more normal color schemes. And, if you'd like to pick up a reminder or two of our Nation's 200th birthday, why don't you wait and pick up some real bargains, say about March, 1977. You may even be able to snap up the official recycled World's Fair July Fourth, 1976, countdown clock, which, incidentally, isn't working right now.

Ken Rickey, Eyewitness News

■ On February 10, 1976, Sims filed a complaint for damages alleging that KIRO had broadcast a defamatory

publication concerning his business. KIRO moved to dismiss the action with prejudice. The motion was in the nature of one to dismiss for failure to state a claim upon which relief can be based under CR 12(b)(6). The trial court considered the motion as a motion for summary judgment pursuant to CR 56 in view of the fact that evidentiary materials were considered. After viewing the broadcast in question, the trial court dismissed the case on the basis that the plaintiff had not been identified as a party engaged in wrongdoing and the comments made by the broadcaster were fair, truthful comments concerning a matter of public interest.

Sims contends that the broadcast was capable of a defamatory meaning and that whether the broadcast and the innuendo conveyed to the consuming public were of and concerning him, and whether they created an injurious false impression of his business, were questions for the jury.

■ The major issue presented is whether the plaintiff has proved that he was the subject of the allegedly defamatory statement. The elements of a cause of action for defamation are stated in section 558 of Restatement (Second) of Torts (1977) as:

(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

The burden of proving the elements of the cause of action are on the plaintiff, including the requirement that the plaintiff prove that the communication was made of and concerning him. *Hillman v. Star Publishing Co.*, 64 Wash. 691, 117 P. 594 (1911); *Farber v. Cornils*, 94 Idaho 326, 487 P.2d 689 (1971); Restatement (Second) of Torts § 580A, comment *f* (1977).

■ We hold that if it can be said as a matter of law that the plaintiff has failed to submit convincingly clear proof of his identity as a target of an allegedly libelous statement, the trial court must dismiss the action when a motion for summary judgment is brought on that basis by the defendant.

■■ A broadcast must be considered as a complete picture and not by isolated segments. *Gaffney v. Scott Publishing Co.*, 35 Wn.2d 272, 277, 212 P.2d 817 (1949); *James v. Gannett Co.*, 40 N.Y.2d 415, 353 N.E.2d 834, 386 N.Y.S.2d 871 (1976). A court is bound to invest words with their natural and obvious meaning, and may not extend language by innuendo or by the conclusions of the pleader. The defamatory character of the language used must be certain and apparent from the words themselves, and so must the identification of the plaintiff as the person defamed. *Landau v. Columbia Broadcasting System*, 205 Misc. 357, 128 N.Y.S.2d 254 (1954), *aff'd*, 147 N.Y.S.2d 687 (1955). One cannot by implication identify himself as the target of an alleged libel if the allegedly false statement does not point to him. *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 100 A.L.R.2d 218 (1960). This is not to say that it is necessary that a plaintiff be mentioned by name in order to recover damages, but it is sufficient if viewers, hearers or readers will conclude from a perusal of the article that the plaintiff is the one against whom publication is aimed. *Ryan v. Hearst Publications, Inc.*, 3 Wn.2d 128, 100 P.2d 24 (1940). We find in P. Ashley, *Say It Safely* 30 (3d ed. 1966), the following:

> The test is not whom the story intends to name but who a part of the audience may reasonably think is named— "not who is meant but who is hit," as one court put it.

The plaintiff would have the jury decide whether or not the plaintiff has been identified by the statements. We are cited to *Pitts v. Spokane Chronicle Co.*, 63 Wn.2d 763, 388 P.2d 976, 9 A.L.R.3d 550 (1964), and *Purvis v. Bremer's, Inc.*, 54 Wn.2d 743, 344 P.2d 705 (1959), which held that a statement may be libelous depending upon the surrounding

circumstances and the meaning conveyed to the publication's audience. Likewise, our attention is called to *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 546 P.2d 81 (1976), which held that a private individual may recover damages for defamation where the substance makes substantial danger to reputation apparent on a showing that the defendant was aware, or should have been aware, that the statement was false or would create a false impression in some material respect. These holdings deal with the substance of the statements themselves as libelous, and not with the question of the identification of the plaintiff. Further, in each of these cases no doubt was presented as to the person about whom the statements were made. In each case the person was specifically named. We do not reach an analysis of the statement made in the case before us as to whether its content could be said to be libelous or not.

■ Our holding is based, rather, on the failure of the proof to show with convincing clarity that the plaintiff was the person about whom the telecast was made. The proof presented that the statements were made about the plaintiff gives rise to no more than conjecture as to that element. This is not sufficient. The plaintiff has failed to submit a triable issue. *See Dauer & Fittipaldi, Inc. v. Twenty First Century Communications, Inc.*, 43 App. Div. 2d 178, 349 N.Y.S.2d 736 (1973).

We are also cited to *Young v. New Mexico Broadcasting Co.*, 60 N.M. 475, 292 P.2d 776 (1956), in support of the argument that the sufficiency of the identification of the plaintiff should be a question for the jury. There the evidence presented reflected that different persons who saw the telecast were permitted to associate it with the plaintiff. However, the evidence presented further showed that the telecast plainly displayed the criticized newspaper advertisement of the plaintiff during the television program so that there could be no doubt but that the words attacking fraudulent television repairmen were directly and clearly

linked to the plaintiff. Likewise, in *Wilson v. Sun Publishing Co.*, 85 Wash. 503, 148 P. 774 (1915), an article contained libelous statements about a restaurant and, as in *Young v. New Mexico Broadcasting Co.*, *supra*, stated the name of the restaurant. This was held to be libelous of the partners of the cafe because the cafe was identified specifically. No such identification is present here.

■ Section 564A of the Restatement (Second) of Torts (1977) states that:

One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if,

(a) the group or class is so small that the matter can reasonably be understood to refer to the member, or

(b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

We have viewed the video tape recording of the alleged libel and agree with the trial court that the comments made by the defendant were comments concerning the sale of bicentennial memorabilia and souvenirs in general, and did not specifically single out the plaintiff or particularly refer to him out of all of those engaged in selling bicentennial souvenirs.

In this instance, the scales must be tilted in favor of the need of free speech as against the right to preserve one's reputation. *See Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 564 P.2d 1131 (1977). The statements about the bicentennial merchandise can be submitted to a jury only if it could be said that they clearly refer to the plaintiff. If Mr. Sims is looked upon as a member of a group or class of persons engaged in selling bicentennial souvenirs, he cannot claim that the telecast personally refers to him as *the* member of the group that is the subject of the statements, or that the group is so small that the statements can be understood as referring to him in particular. *Dunlap v. Sundberg*, 55 Wash. 609, 104 P. 830 (1909); *Lathrop v. Sundberg*, 55 Wash. 144, 104 P. 176 (1909).

 Summary judgment is to be granted in defamation cases, as in other cases, only when there is no genuine issue as to a material fact. The evidence must be considered in the light most favorable to the nonmoving party. However, the function of the trial court in ruling on a defense motion for summary judgment in a defamation action is to determine if the plaintiff's proffered evidence is of a sufficient quantum to establish a prima facie case with convincing clarity. Unless the plaintiff has done so, the motion must be granted. *Chase v. Daily Record, Inc.*, 83 Wn.2d 37, 515 P.2d 154 (1973); *Exner v. American Medical Ass'n*, 12 Wn. App. 215, 224, 529 P.2d 863, 75 A.L.R.3d 603 (1974).

 The plaintiff has not presented convincingly clear proof of his identity as the person about whom the damaging statement was made. The trial court, in ruling on a motion for summary judgment in a libel case, must grant the motion if it can be said as a matter of law that the proof presented does not establish the identity of the allegedly defamed person with convincing clarity. When the desirability of protecting the need for fair comment by the disseminators of news and information is weighed against the desirability of protecting the individual from unfair comment, the prior consideration must be given greater weight than the latter—at least to the extent that the plaintiff must show with convincing clarity that he was the target of the statement. The evidence presented is insufficient to entitle the plaintiff to submit the matter to trial on the merits.

More than 10 days prior to trial, the defendant made an offer of judgment pursuant to CR 68. The rule states:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the

court shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

As the judgment obtained by the plaintiff was less favorable than the defendant's offer of judgment, the defendant is entitled to costs incurred after the making of the offer. The trial court refused to allow attorney's fees and expert witness fees as costs pursuant to the rule, indicating that he did not have authority to include expenses in such an award beyond the statutory costs allowable under RCW 4.84.030 and 4.84.080. The defendant cross–appeals this ruling.

The term "costs" has been interpreted as not including attorney's fees and expert witness fees. *Fiorito v. Goerig*, 27 Wn.2d 615, 179 P.2d 316 (1947). In the event that the rule is to be expanded to include attorney's fees and expert witness fees as "costs," it should be expanded by statute or by amendment. We decline to assume to ourselves the prerogative to do so.

The summary judgment of dismissal is affirmed.

FARRIS, C.J., and RINGOLD, J., concur.

Reconsideration denied August 22, 1978.

Review denied by Supreme Court December 14, 1978.