[No. 15814–7–I.  Division One.  August 20, 1986.]

DOROTHY CAMER, ET AL, *Appellants,* v. THE SEATTLE POST–INTELLIGENCER, ET AL, *Respondents.*

*Dorothy Camer* and *Margaret Coughlin,* pro se.

*David Utevsky, Camden M. Hall, Lewis Taylor Egan,* and *Foster, Pepper & Riviera,* for respondents.

PEKELIS, J.—Dorothy Camer and Margaret Coughlin appeal the trial court's order of summary judgment dismissing their libel complaint against The Seattle Post–Intelligencer (The Seattle P.I.) and reporter Susan Goldberg. Camer and Coughlin allege that the court erred in dismissing their complaint because they have established a prima facie case of defamation with convincing clarity. We affirm the trial court.

## FACTS

The lawsuit arises out of an article written by Susan Goldberg published on June 20, 1982, in The Seattle P.I. The article is entitled "'Nuisance' suits clog the courts", and discusses the effects and implications of pro se litigants on the court system. Several attorneys are quoted: Mike Redman, executive secretary of the Washington Association of Prosecuting Attorneys; Michael Hoge, attorney for the Seattle School District (District); Richard Mann, an assistant city attorney; and Malachy Murphy, an assistant attorney general.

The article first discusses Redman's comments regarding the "constant battle" in the "legal libraries and law offices of the state attorney general, city hall and Seattle School District" against "'nuisance suers.'" Redman referred specifically to a personal restraint petitioner and generally to other prisoners who Redman predicted would file meritless personal restraint petitions. The article continues:

> But Redman has other reasons to worry about nuisance suits, and not just those filed by prisoners.
> There are also the suits brought by "constitutional crazies," he says. Those are the people who think "flouri-

dated [*sic*] water is a communist plot to enslave us" or insist the only legal tender is gold and battle in court over the use of paper money.

Then there are suits by those "who are just not operating with a level bubble," Redman says. Those are the people who keep overworked county prosecutors busy responding to charges he says are preposterous on their face.

In all, Redman estimates that state's county prosecutors spend about $750,000 each year, not counting court costs and outside attorneys' fees, to fend off the myriad of frivolous charges brought by constant litigants.

Similar charges are leveled, correctly or not, at Seattle citizens like Dorothy Camer and Margaret Coughlin, who together have filed nearly two dozen separate legal actions against the state, city and Seattle School District.

The article also notes that both women frequently appear pro se, that Camer has never won a case, and that when contacted by Goldberg for comment on their actions, both Camer and Coughlin said they were too busy with their legal work to be interviewed.

Also quoted are estimates by Hoge and Mann as to the cost of these types of cases and a statement by Murphy that: "'Most of these cases are not legitimate. . . . The claims are so off the wall they have to represent themselves.'" The article then avers that nuisance suits contribute to court congestion, a major problem at all three levels of the court system in this state. Finally, Hoge comments on nuisance suits: "'They are time–consuming, expensive and frustrating for me and others involved,' . . . 'but that's the price we pay for a legal system where each citizen has the right to be heard in the courts.'"

On July 20, 1982, Camer and Coughlin filed a complaint for libel, alleging that the article defamed them. On April 20, 1984, the defendants filed a motion for summary judgment on the grounds that the article did not include statements concerning Camer and Coughlin which were both false and defamatory, that some of the statements complained of were not "'of and concerning'" them, and that the statements complained of were privileged opinion and/

or fair comment. The defendants also alleged that Camer and Coughlin were limited public figures and had not shown that the article was published with actual malice. On May 7, 1984, the trial court entered an order granting the motion and dismissing the complaint with prejudice.

The record before the court at the hearing on the motion for summary judgment contained the following facts: Dorothy Camer has been very interested in school district issues. Related to this interest, she has been involved in approximately 10 legal actions regarding public education, usually appearing pro se. Her claims are generally based on contentions that the education provided to her children was deficient. For example, in 1980 she filed a complaint for "educational malpractice", in which she alleged, *inter alia,* that the District and the State did not provide her children with their constitutional right to a basic education. The complaint also alleged that her son's civil liberties were violated when he was temporarily denied the freedom to play ball on the playground with female classmates. In another suit, she claimed that her son was denied his constitutional rights because he was not given penmanship instruction, he was not informed of an honors math program, and he was not instructed in the complete curriculum for a required Washington State history course. Three times she attempted to intervene in suits already pending between the District and the State. In addition, Camer filed four complaints against school officials with the Office for Civil Rights of the United States Department of Education. In every case, Camer's claims were dismissed.

Camer admits that she has called both print and television reporters to discuss her cases. She has been quoted in the newspaper on various District–related issues and has written "letters to the editor" criticizing the District. On one occasion, she mailed a press release regarding her thoughts on deficiencies in the school system and inadequate press coverage thereof.

Margaret Coughlin has been a long–time community activist in the Magnolia area of Seattle. In 1937, she was a

member of the State Legislature and in 1971 ran for a position on the Seattle City Council. More recently, she has been active in environmental, land use, and school–related issues. Her work has been mentioned in many newspaper articles, especially her involvement in calling for an environmental impact statement (EIS) as a prerequisite to the development of Discovery Park. She has regularly written "letters to the editor" and to City and District officials, and she has drafted and circulated petitions on various issues.

From 1974 to 1982, Coughlin filed approximately nine lawsuits involving land use and environmental issues against the City of Seattle, the District, and others. An example of one of her suits was an action filed against the City in 1975, alleging that the Board of Adjustment acted arbitrarily and capriciously in reversing a decision denying a variance to a Magnolia–area rest home. Her complaint was dismissed, and the decision was affirmed on appeal. In 1981, she filed complaints against the District regarding its decision to close certain Magnolia–area elementary schools. These complaints were also dismissed. However, Coughlin's 1974 suit against the City regarding the development of Discovery Park was successful in that the City voluntarily agreed to issue an EIS. Coughlin has brought suits both pro se and with counsel.

At the time she wrote the article, Susan Goldberg was an education reporter for The Seattle P.I. As part of her daily routine, Goldberg would call various District offices to inquire about District activities. Over a period of months, Goldberg learned that there were a number of people, like Camer, who frequently filed cases against the District or other government entities. She thought that it would be interesting to develop a story about this phenomenon.

In researching the article, Goldberg spoke with people on the District's legal staff, as well as lawyers from the State Attorney General's office and the City Attorney's office. Michael Hoge gave Goldberg a large number of files of the cases brought against the District by Camer and Coughlin. In addition to interviewing Hoge, she talked to Dave Bur-

man, who also handled cases for the District, Mike Redman, Richard Mann, and Malachy Murphy.

Camer recalls that about 6 p.m. on Thursday, June 17, 1982, Goldberg called her about the article. Camer told Goldberg that she was too busy to talk and would not be able to speak with her for at least a week. Goldberg did not give her the impression the article had anything in particular to do with her. Goldberg states that when she told Camer about the article and asked her opinion as to why she felt she needed to file so many lawsuits, Camer told her she was too busy to talk.

Coughlin recalls that on June 17, Goldberg called to ask her why she was filing lawsuits and told her that she had a deadline for the Sunday paper. Coughlin stated that she was typing "an important legal paper" and would have to get back to her later. Coughlin did not want to be quoted because she was hesitant to comment on a pending case.

## ANALYSIS

■ In reviewing the decision to grant summary judgment, this court engages in the same inquiry as did the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Styner v. England,* 40 Wn. App. 386, 388, 699 P.2d 234 (1985). In defamation cases, as in other cases, a motion for summary judgment under CR 56(c) should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The evidence must be considered in the light most favorable to the nonmoving party. *Wilson,* at 437; *Rye v. Seattle Times Co.,* 37 Wn. App. 45, 51–52, 678 P.2d 1282, *cert. denied,* 469 U.S. 1087 (1984). In addition, in the area of defamation, there are other considerations.

> In the First Amendment area, summary procedures are even more essential. For the stake here, if harassment succeeds, is free debate. . . . Unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the

harassment of lawsuits, they will tend to become self–censors. And to this extent debate on public issues and the conduct of public officials will become less uninhibited, less robust, and less wide–open, for self–censorship affecting the whole public is "hardly less virulent for being privately administered."

(Citations omitted.) *Mark v. Seattle Times,* 96 Wn.2d 473, 484–85, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982) (quoting *Washington Post Co. v. Keogh,* 365 F.2d 965, 968, 20 A.L.R.3d 972 (D.C. Cir. 1966), *cert. denied,* 385 U.S. 1011 (1967)); *Rye,* at 53.

█ Thus, a defamation plaintiff resisting a defense motion for summary judgment by a media defendant must establish a prima facie case as to each element of defamation, *i.e.,* falsity, an unprivileged communication, fault, and damages, by evidence of convincing clarity. *Mark,* at 486–87;[1] *see Dunlap v. Wayne,* 105 Wn.2d 529, 533–34, 716 P.2d 842 (1986). In addition, the plaintiff has the burden of proving that the communication was made of and concerning him or her. *Sims v. KIRO, Inc.,* 20 Wn. App. 229, 233, 580 P.2d 642, *review denied,* 91 Wn.2d 1007 (1978), *cert. denied,* 441 U.S. 945 (1979).

In their reply brief, Camer and Coughlin allege that because this case involves their First Amendment right of access to the courts, this burden should not apply to them. Rather, it should be the defendants' burden of establishing that there were no genuine issues of material fact. They cite no authority for this proposition. Contentions unsupported by argument or citation of authority will not be considered on appeal. RAP 10.3(a)(5); *Top Line Equip. Co. v. National Auction Serv.,* 32 Wn. App. 685, 692, 649 P.2d 165 (1982).

---

[1]The United States Supreme Court adheres to this standard in *Anderson v. Liberty Lobby, Inc.,* ___ U.S. ___, 91 L. Ed. 2d 202, 106 S. Ct. 2505, 2513, 2515 (1986), which holds that in a libel suit brought by a public figure, a court ruling on a defense motion for summary judgment must decide whether the evidence presented is such that a reasonable jury might find the plaintiff has established actual malice with convincing clarity.

## A
### OF AND CONCERNING ANOTHER

██ Plaintiff must submit convincingly clear proof of his or her identity as a target of an allegedly libelous statement to withstand a defense motion for summary judgment. *Sims,* at 234. The identification of the one defamed must be certain and apparent from the words themselves. One cannot by implication identify oneself as the target of an alleged libel if the allegedly libelous statement does not point to him or her. It is not necessary that the plaintiff be mentioned by name in order to recover damages, but it is sufficient if the audience will conclude from a perusal of the article that the plaintiff is the one against whom publication is aimed. *Sims,* at 234.

In addition, in determining whether a publication is defamatory, it must be read as a whole and not in part or parts detached from the main body. *Gaffney v. Scott Pub'g Co.,* 35 Wn.2d 272, 277, 212 P.2d 817 (1949); *Sims,* at 234. Camer and Coughlin allege that when the article is read as a whole, containing as it does statements such as the following, it is defamatory:

(1) "'Nuisance' suits clog the courts"
(2) "The cases have become something of a joke."
(3) "'What these people do is hammer us with absolute nonsense you have to respond to'."
(4) "'Constitutional crazies'"
(5) "There are also the suits brought by 'constitutional crazies'."
(6) "Then there are suits by those 'who are just not operating with a level bubble'."
(7) "[C]harges [that] . . . are preposterous on their face."
(8) "'The claims are so off the wall they have to represent themselves.'"

They particularly contend that the article contains two false and defamatory inferences about them: first, that they are mentally incompetent; and second, that the cases which they filed are frivolous and nuisances.

With regard to their first contention, very few of the statements complained of when read in context even conceivably refer to Camer and Coughlin. Redman's comments about "constitutional crazies" as well as suits by those "not operating with a level bubble" are colloquial hyperbole and create an image of zealots, not incompetents. Furthermore, these statements are sufficiently separate from the portions of the article about Camer and Coughlin so as to dispel any inference that it is of and concerning them.

However, with regard to their second contention, the average reader, knowing little or nothing about the two women except for what they have read in the article, could reasonably conclude that plaintiffs are viewed as bringing frivolous or nuisance lawsuits.

> The test is not whom the story intends to name but who a part of the audience may reasonably think is named—"not who is meant but who is hit," as one court put it.

*Sims,* at 234 (quoting P. Ashley, *Say It Safely* 30 (3d ed. 1966)). We agree that there is an issue of fact as to whether they are implicated in the class of nuisance suers.

## B
### FALSITY

Although we cannot say as a matter of law that the article clearly excludes Camer and Coughlin from the group referred to as "nuisance suers", the plaintiffs also must show with convincing clarity that the statements "of and concerning" them are false. Plaintiffs recognize that not every misstatement of fact, however insignificant, is defamatory and thus actionable. Rather, the law requires that the substance of the statement makes substantial danger to reputation apparent. *Mark,* at 493; *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 445, 546 P.2d 81 (1976).

> It is now generally agreed that a defamation defendant need not prove the literal truth of every claimed defamatory statement. W. Prosser, *Torts* 798 (4th ed. 1971). A defendant need only show that the statement is substantially true or that the gist of the story, the portion that carries the "sting", is true. W. Prosser, *supra.*

*Mark*, at 494.[2]

Defendants argue, however, that the portion of the article carrying the "sting" regarding Camer and Coughlin constitutes mere opinion, and not fact. Defendants argue that as a matter of law the opinions cannot be proven false and thus cannot be defamatory.

## C
### AN UNPRIVILEGED COMMUNICATION

[4] While communication of a false fact may not be privileged, expressions of opinion are protected under the First Amendment and thus are not actionable:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

(Footnote omitted.) *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 41 L. Ed. 2d 789, 94 S. Ct. 2997, 3007 (1974). Restatement (Second) of Torts § 566, at 170 (1977) provides:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

The determination of whether a communication is one of fact or opinion is a question of law for the court. *Benjamin v. Cowles Pub'g Co.,* 37 Wn. App. 916, 922, 684 P.2d 739 (1984). In making this determination, the court should consider:

> (1) the entire article and not merely a particular phrase or sentence; (2) the degree to which the truth or falsity of

---

[2]In the recent case of *Philadelphia Newspapers, Inc. v. Hepps,* ___ U.S. ___, 89 L. Ed. 2d 783, 106 S. Ct. 1558, 1559 (1986), the Court held that the plaintiff has the burden of proving falsity, stating: "where a newspaper publishes speech of public concern, a private–figure plaintiff cannot recover damages without also showing that the statements at issue are false."

a statement can be objectively determined without resort to speculation; and (3) whether ordinary persons hearing or reading the matter perceive the statement as an expression of opinion rather than a statement of fact.

(Citations omitted.) *Benjamin,* at 923.

In considering the article as a whole, it is evident that the tone is one of opinion. Virtually every statement cited as defamatory by Camer and Coughlin is an opinion of one of the quoted attorneys that the lawsuits are frivolous and a nuisance. One cannot determine the truth or falsity of statements such as "[t]he cases have become something of a joke" or "[w]hat these people do is hammer us with absolute nonsense you have to respond to". Nor do the statements that the suits are "frivolous" and constitute a "nuisance" imply the allegation of undisclosed defamatory facts as their basis. Rather, it is apparent to the ordinary reader that the quoted attorneys are irritated by their increased workload. Their lack of objectivity and the absence of objective fact is inherent in their conclusions regarding the plaintiffs. This is aptly pointed out by the article's author when she states in her first reference to the plaintiffs:

> Similar charges [of bringing frivolous lawsuits] are leveled, correctly or not, at Seattle citizens like Dorothy Camer and Margaret Coughlin, who together have filed nearly two dozen separate legal actions against the state, city and Seattle School District.

The use of the phrase "correctly or not" emphasizes the point that the criticism of the plaintiffs is a matter of opinion.

We note that similar, if not more disparaging, statements in other contexts have been upheld as constitutionally protected opinion. For example, in *Spelson v. CBS, Inc.,* 581 F. Supp. 1195 (N.D. Ill. 1984), *aff'd,* 757 F.2d 1291 (7th Cir. 1985), the court found that in the context of a series of news broadcasts entitled "'Cashing in on Cancer'", statements such as "'Spelson had overstepped the bounds of his training'", Spelson's practices were "'unethical, unprofes-

sional, inhuman and totally worthless'", Spelson's behavior "'really borders on the criminal'", and other statements regarding "'cancer con–artists'" and "'cancer quacks'" were all privileged as statements of opinion. *Spelson,* at 1203–05. Likewise, in *Stuart v. Gambling Times, Inc.,* 534 F. Supp. 170 (D.N.J. 1982), the court held a statement to be opinion, and thus not actionable, that the publication and sale of a book was "the [number] 1 fraud ever perpetrated upon the gambling reader." *Stuart,* at 171, 172.

Even apparent statements of fact may assume the character of opinions, and thus be privileged, when made in "public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole. . . .'" *Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir. 1980) (quoting *Gregory v. McDonnell Douglas Corp.,* 17 Cal. 3d 596, 601, 552 P.2d 425, 428, 131 Cal. Rptr. 641, 644 (1976). In other words, both the immediate as well as broader social context in which the statements occur should be considered. *Ollman v. Evans,* 750 F.2d 970, 982–84 (D.C. Cir. 1984). Clearly, given the public's concern both with court congestion and the use of taxpayer funds, the article raises issues which result in heated and often emotional discussion. Thus, while the article may characterize Camer and Coughlin's suits as frivolous and nuisances, this is undoubtedly opinion and therefore not actionable.[3]

## D

### FAULT

■ The degree of fault necessary to make out a prima facie case of defamation depends on whether the plaintiff is a private individual or a public figure or a public official. If the plaintiff is a private individual, a negligence standard of fault applies. *Bender v. Seattle,* 99 Wn.2d 582, 599, 664

---

[3]Because we find that the statements complained of are privileged opinions, we need not address the defendants' claim that the opinions expressed in the article are privileged under the fair comment doctrine.

P.2d 492 (1983); *Taskett,* at 445. Otherwise, the plaintiff must prove actual malice, *i.e.,* knowledge of falsity or reckless disregard of falsity, to recover. *Gertz,* at 342; *Bender,* at 599. A person is not considered a public figure solely because he or she has sought relief through the courts or is involved in a controversy which is newsworthy. To be considered a public figure, courts usually require the plaintiff to voluntarily seek to influence the resolution of public issues. *Bender,* at 600.

> [The] designation [as a public figure] may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. . . .
>
> . . . We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. . . . It is preferable to reduce the public–figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

*Gertz,* at 351–52; *Exner v. AMA,* 12 Wn. App. 215, 221, 223–24, 529 P.2d 863, 75 A.L.R.3d 603 (1974). In *Exner,* a doctor brought a defamation suit for the publication of an article on fluoridation. The court found that the doctor was a public figure in regard to the limited area of fluoridation because he abandoned his anonymity, assumed leadership, and attempted to influence the outcome of the issue. The court, therefore, required him to prove that the defendants wrote with malice. *Exner,* at 224.

In their briefs, Camer and Coughlin argue that even if they were public figures in the areas of environmental and zoning issues and public education, they are not public figures in the area of court overcrowding.[4] There is no clear

---

[4]We note that at oral argument Coughlin admitted to being a limited public figure.

boundary between the subjects of their lawsuits and the subject of the article. In addition, like Dr. Exner, there were ways in which they voluntarily sought to influence the resolution of public issues, *e.g.,* a press release, "letters to the editor", frequent participation in public meetings and hearings. We, therefore, find them to be limited public figures, and as such, they must establish with convincing clarity that Goldberg and The Seattle P.I. acted with actual malice in publishing the article.

■ Camer and Coughlin allege that Goldberg acted maliciously because she did not give them an effective opportunity to respond to the comments in the article. However, the evidence shows that Goldberg made a good faith effort to talk to them. They also allege that she acted maliciously because Michael Hoge and Richard Mann have been hostile to Coughlin in the course of litigation. The use of hostile sources, even when that fact is known to the reporter, is insufficient to establish a prima facie case of malice by convincing clarity. *Rye v. Seattle Times Co.,* 37 Wn. App. 45, 54, 678 P.2d 1282, *cert. denied,* 469 U.S. 1087 (1984). Indeed, there is insufficient evidence here to establish even negligence. All of those quoted have stated that Goldberg's account of their comments was accurate.

## E
### DAMAGES

Finally, Camer and Coughlin must establish that they were damaged in some way by the publication of the article. Rather than asserting how they were damaged, they appear to contend that because they have established the other elements of defamation, it naturally follows that they have also established damages. Alternatively, they appear to argue that the issue of damages is a jury question and not one "within the function of the trial court to determine." Clearly, this is not the law when a defamation defendant brings a motion for summary judgment. To avoid dismissal, the plaintiff must establish all elements with convincing clarity. *Mark v. Seattle Times,* 96 Wn.2d 473, 486, 635 P.2d

1081 (1981), *cert. denied,* 457 U.S. 1124 (1982). This they have failed to do.

In attempting to establish damages, Camer and Coughlin claim that the article exposed them to contempt and ridicule and deprived them of public confidence. In addition, they argue that as a result of the article's publication they have been denied their right of access to the courts. They offer no evidence in support of either of these claims. A mere conclusory statement not supported by specific facts which demonstrate that there is a genuine issue is insufficient to avoid summary judgment. CR 56(e); *Mark,* at 490.

In summary, while certain aspects of the article may be "of and concerning" Camer and Coughlin, we hold that they have not established a prima facie case by convincing clarity that the defendants acted with malice or that they were damaged. We also hold that the article is not defamatory because it constitutes privileged opinion.

We affirm the trial court's order granting the defendants' motion for summary judgment.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied September 18, 1986.

Review denied by Supreme Court January 6, 1987.