IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEBORAH L. CAHILL, MD,<br><br>    Appellant,<br><br>    v.<br><br>SWEDISH HEALTH SERVICES d/b/a SWEDISH MEDICAL CENTER, a Washington nonprofit corporation; INSYTU, LLC, a Washington for-profit limited liability company; PROVIDENCE HEALTH & SERVICES d/b/a PROVIDENCE ST. JOSEPH HEALTH, a Washington nonprofit corporation; and DOES 1-100,<br><br>    Respondents. | No. 82590-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, J. — Dr. Deborah Cahill appeals from the summary judgment dismissal of her claims for employment discrimination and breach of contract. Because Cahill fails to demonstrate a genuine issue of material fact, we affirm the dismissal. However, the trial court erred in awarding several costs and we therefore reverse and remand for correction of the cost award.

FACTS

In December 2014, Cahill was contacted about a simulation facilitator position at InSytu, a subsidiary of Swedish Health.[1] At the time, Cahill's medical

---

[1] For clarity, we refer to InSytu and Swedish as "Swedish."

Citations and pin cites are based on the Westlaw online version of the cited material.

license was valid, but due to be suspended. She had informed Swedish of the potential suspension, as well as her struggles with alcoholism. On January 19, 2015, Swedish offered Cahill a physician facilitator position at the rate of $150.00/hour, which she accepted. On March 26, 2015, Cahill's license was suspended. Cahill delayed her start date so she could complete additional alcohol treatment. A few weeks before her new start date, Swedish informed Cahill that it was no longer able to offer her the same role or pay because of her license status. Cahill agreed to take a different role, specially created for her in order to accommodate her license suspension, at a lower pay rate. In April 2019, Cahill earned reinstatement of her license. As a result, Cahill's supervisor, Theresa Demeter, submitted a Position Request Form (PRF) to move Cahill into a physician facilitator role with higher pay.

Cahill worked at Swedish for four years without any documented performance issues. In May 2019, two members of the InSytu/Swedish leadership team (Ian Doten and Demeter) met with Cahill to discuss performance concerns; Cahill was placed on a 90-day Performance Improvement Plan. The next month, Cahill was placed on administrative leave pending an investigation after another Swedish employee made a complaint about Cahill and stated that she would leave Swedish to avoid working with Cahill. While Cahill was on administrative leave, Swedish's compliance director Jennifer McAleer discovered that Cahill was on the Washington State Health Care Authority's (HCA) list of excluded providers. One of Swedish's policies, PROV-HR-423 (Policy), provides that any employee excluded from participation in government programs will be

terminated.  On July 1, 2019, Cahill was terminated based on the Policy.  Days later, Cahill's name was removed from the HCA list at her request and she asked Swedish to be reinstated.  Demeter testified that she declined to reinstate Cahill because of performance concerns.

Several months later, Cahill filed a complaint for employment discrimination, wrongful termination, and defamation.  The complaint was later amended to add claims for retaliation, disparate treatment, and breach of contract.  Cahill ultimately removed her claim for defamation.  In February 2021, Swedish moved for summary judgment dismissal, arguing that there were no genuine issues of material fact and it was entitled to judgment as a matter of law. The court granted Swedish's motion for summary judgment and dismissed Cahill's claims.  The court also granted Swedish's motion for costs under CR 68. Cahill timely appeals.

ANALYSIS

This court engages in a de novo review of a summary judgment dismissal, conducting the same inquiry as the trial court.  Marquis v. City of Spokane, 130 Wn.2d 97, 104-05, 922 P.2d 43 (1996).  Considering all evidence and reasonable inferences in the light most favorable to the nonmoving party, this court determines whether "there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law."  Id. at 105.  However, the nonmoving party may not rely solely on speculation or bare assertions. Becker v. Washington State Univ., 165 Wn. App. 235, 245, 266 P.3d 893 (2011). In the context of a workplace discrimination action, "the worker must do more

-3-

than express an opinion or make conclusory statements," but instead "must establish specific and material facts to support each element of [their] prima facie case." Marquis, 130 Wn.2d at 105.

I.      Disparate Treatment

Cahill first alleges the court erred in finding there was no issue of material fact as to her disparate treatment claims. Cahill asserts several acts of disparate treatment based on her alcoholism and her age: termination and refusal to reinstate, as to both alcoholism and age, and lesser pay than her peers based on her alcoholism.

The Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, prohibits employers from taking adverse actions against employee based on, among other things, age and disability. RCW 49.60.180. The employee must first demonstrate the prima facie elements and, if they successfully do so, there is an inference of discrimination. Marquis, 130 Wn.2d at 114. The employer may rebut this inference by presenting evidence that they had a legitimate, nondiscriminatory reason for the adverse action. Id. "At this point, the plaintiff retains the final burden of persuading the trier of fact that discrimination was a substantial factor in the disparate treatment." Id. The plaintiff can meet this burden by demonstrating that the employer's reason is pretext for discrimination by showing: "(1) the employer's reasons have no basis in fact, (2) the employer was not actually motivated by the reasons, or (3) the reasons are insufficient to prompt the adverse employment decision." Becker, 165 Wn. App. at 252. "[S]ummary judgment to an employer is seldom appropriate in the WLAD cases

because of the difficulty of proving a discriminatory motivation." Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014). However, if the "'record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred,'" summary judgment in favor of the employer is proper. Becker, 165 Wn. App. at 252-53 (quoting Milligan v. Thompson, 110 Wn. App. 628, 637, 42 P.3d 418 (2002)) (internal quotation marks omitted).[2]

### A. Lower Pay Based on Alcoholism

Cahill first contends she was paid less than her peers based on her alcoholism. In a disparate treatment claim, the plaintiff must demonstrate that (1) they are in a protected class, (2) they were treated less favorably than (3) similarly situated employees not in the protected class, (4) who do the same work. Davis v. West One Auto. Grp., 140 Wn. App. 449, 459, 166 P.3d 807 (2007). Swedish argues that Cahill failed to demonstrate that it took an adverse employment action against her or alternatively, her rate of pay was based on the legitimate, nondiscriminatory reason that she did not possess a valid medical license.

---

[2] Swedish argues Cahill's claim fails based on the same actor inference. We may apply the same actor inference "'[w]hen someone is both hired and fired by the same decision makers within a relatively short period of time, there is a strong inference that [they were] not discharged because of any attribute the decision makers were aware of at the time of hiring.'" Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 853, 292 P.3d 779 (2013) (quoting Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 189-90, 23 P.3d 440 (2001)). However, it is not clear from the record who was responsible for Cahill's hiring and firing. Since Cahill is entitled to all reasonable inferences as the non-moving party there is a question of fact as to the same actor inference, and we decline to affirm the dismissal on this basis.

"An adverse employment action involves a change in employment that is more than an inconvenience or alteration of one's job responsibilities." Boyd v. Dep't of Soc. & Health Servs., 187 Wn. App. 1, 13, 349 P.3d 864 (2015). This "'depends on the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position.'" Id. (quoting Tyner v. State, 137 Wn. App. 545, 565, 154 P.3d 920 (2007)) (internal quotation marks omitted). An adverse employment action includes ""'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."'" Ellorin v. Applied Finishing, Inc., 996 F. Supp. 2d 1070, 1093 (2014) (quoting Vance v. Ball State Univ., 570 U.S. 421, 431, 133 S. Ct. 2434, 186 L. Ed. 565 (2013)) (analyzing the WLAD).[3]

First, the parties agree that Cahill's alcoholism qualifies as a disability under the WLAD.[4] Second, Cahill had been offered employment at $150.00 per hour in a particular position and she accepted in January 2015. In May 2015, before beginning employment, Cahill agreed to a different position at a lower rate of $53.00 per hour and the change was noted in the employee system. The parties disagree about whether this is an adverse employment action. Swedish argues because Cahill had not started work and accepted a lower pay rate there was no adverse employment action. However, this court gives Cahill all

---

[3] Washington courts look to federal case law interpreting the AEDA, ADA, and Title VII to guide analysis of the WLAD, though those cases are not binding. Kumar v. Gate Gourmet, Inc., 180 Wn.2d 481, 491, 325 P.3d 193 (2014).

[4] Washington courts have not decided whether alcoholism is a disability under the WLAD, leaving the question to juries and the Legislature. Phillips v. City of Seattle, 111 Wn.2d 903, 910, 766 P.2d 1099 (1989).

reasonable inferences as the nonmoving party. Because Cahill had been offered, and accepted, a position before her role was changed and her pay reduced, Cahill raised a genuine issue of material fact as to whether there was an adverse employment action. Third, Cahill argues her similarly situated colleagues who were not alcoholics were paid at a higher scale. However, Cahill failed to provide any evidence of colleagues who did not have a medical license who were paid at a higher rate. At oral argument, Cahill argued other physician facilitators were similarly situated because they worked in the same role.[5] Cahill ignores the key distinction between herself and the other facilitators — she lacked an active, valid medical license. Without any evidence of a similarly situated employee who received more favorable treatment, she fails to meet this element of the prima facie case.

Ultimately, Cahill has the burden to demonstrate, with more than mere speculation or conclusory statements, that the disparate pay was based on alcoholism rather than her lack of a medical license. Cahill failed to meet her burden and thus summary judgment dismissal was proper.

B.     Termination Based on Age

In a disparate treatment claim based on age, a plaintiff makes a prima facie case by demonstrating they: (1) were 40 years or older, (2) were discharged, (3) were doing satisfactory work prior to the discharge, and (4) were "replaced by a younger person." Rice v. Offshore Sys., Inc., 167 Wn. App. 77,

---

[5] Wash. Court of Appeals oral argument, *Deborah L. Cahill, MD, v. Swedish Health Services et al*, No. 82590-9-I (Sept. 29, 2022), at 5 min., 22 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022091086/?eventID=2022091086.

88, 272 P.3d 865 (2012). "[T]he employee is not required to show that [they were] replaced by someone outside" the statutorily protected range (40-70), but they do need to show they were "replaced by someone significantly younger." Griffith v. Schnitzer Steel Indus., Inc., 128 Wn. App. 438, 446-47, 115 P.3d 1065 (2005). Cahill alleges she was terminated and denied reinstatement based on her age.

First, the parties agree Cahill is in the protected age range. Cahill was born in 1952 and in February and March 2019 was 66 years old.[6] The parties also agree that Cahill was discharged. The parties disagree as to the last two elements. Cahill argues that because she was receiving satisfactory performance reviews until March 2019, she was "doing satisfactory work." On May 7, 2019, Cahill had a meeting with Demeter and Doten where the latter shared concerns about Cahill's "professionalism, her interactions with other InSytu staff, her conduct in front of clients, her truthfulness, her ability to work independently, follow-through on assigned tasks and her ability to meet expectations." Cahill was placed on a Performance Improvement Plan. A month later, Cahill was placed on administrative leave pending an investigation by Demeter after another employee made a complaint regarding Cahill. Cahill was ultimately terminated in July 2019. Based on a summary judgment standard, Cahill likely produced enough evidence to raise a genuine issue of material fact as to whether she was doing satisfactory work prior to discharge. Finally, Cahill

---

[6] Cahill does not provide any record citations to support this, nor does she mention her age at the time of termination. We accept the parties' apparent agreement that she was within the protected age range.

alleges new hire Kristen Austen,[7] who was in her 40s, was intended as Cahill's replacement. However, Austen was hired approximately four to five months prior to Cahill's termination and held a part-time position. Cahill's only evidence that Austen was her replacement was Cahill's own belief and speculation that there were fewer simulations scheduled and therefore no need for an additional physician facilitator. This is not sufficient to demonstrate that Cahill was replaced by someone much younger and thus summary judgment dismissal of this claim was proper.

### C. Claims Raised for the First Time on Appeal

Cahill next alleges disparate treatment based on Swedish's refusal to reinstate her after termination based on age. However, this claim was not raised in her complaint or in response to Swedish's motion for summary judgment. Under RAP 2.5(a), we "'may refuse to review any claim of error which was not raised in the trial court.'" Fireside Bank v. Askins, 195 Wn.2d 365, 374, 460 P.3d 157 (2020) (quoting State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009)) (internal quotation marks omitted). Likewise, Cahill failed to raise the claims of termination and refusal to reinstate based on alcoholism until this appeal. We refuse to review these claims based on RAP 2.5(a).[8]

---

[7] Cahill uses "Austen" while Swedish uses "Austin."

[8] Further, these claims would be improper for review as inadequately briefed. Under RAP 10.3(6), an appellant must provide an "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). Cahill provides no substantive argument on these assignments of error, simply asking in a footnote that the court analyze them based on the same framework as her termination and refusal to reinstate claims based on age.

II.    Breach of Contract

Cahill next avers the trial court erred in dismissing her claims for breach of contract because she raised a material issue of fact as to her claim for promissory estoppel and promise of specific treatment under the Policy.

A.    Promissory Estoppel

A promissory estoppel claim contains five elements:

> "(1) a promise which (2) the promisor should reasonably expect to cause the promisee to change [their] position and (3) which does cause the promisee to change [their] position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise."

Becker, 165 Wn. App. at 249 (quoting Havens v. C & D Plastics, Inc., 124 Wn.2d 158, 171-72, 876 P.2d 436 (1994)) (internal quotation marks omitted).  Swedish argues that the InSytu leadership team was not authorized to make promises as to compensation, therefore the first element is not met.  In that same vein, it contends Cahill's reliance was not reasonable (element four) because Demeter had no control over Cahill's rate of pay.

Assuming without deciding that there was a promise, Cahill's claim fails on the final element.  The fifth element requires the promisee demonstrate that injustice can only be avoided by enforcing the promise.  Here, after Cahill's license was reinstated, Demeter submitted a PRF to move Cahill into a Physician Facilitator role which carried a higher rate of pay.  Demeter testified at her deposition that the request "can take six to eight or more weeks to get it approved."  Practically speaking, Swedish was in the process of satisfying any

promise made to Cahill and thus there is no injustice to avoid. This element is not met.

B.    Specific Treatment Under the Policy

Cahill also argues she was promised specific treatment under the Policy. An employee may bring suit to "enforce promises that an employer made in an employee handbook" by demonstrating (1) a statement in the employee manual contained a promise of "specific treatment in specific situations," (2) the employee justifiably relied on that promise, and (3) breach of that promise. Bulman v. Safeway, Inc., 144 Wn.2d 335, 340-41, 27 P.3d 1172 (2001).

Here, the Policy states that all individuals employed by Providence will "be checked against federal government exclusion lists."[9]  It continues, stating "Providence will not . . . continue the employment of . . . any individual who has been excluded from participation in government programs."  If an employee's name is on the Office of Inspector General — List of Excluded Individuals/Entities (OIG-LEIE) and/or General Services Administration — System for Award Management (GSA-SAM) list, they will be terminated if they cannot provide proof of non-exclusion.  The Policy provides an appeals process, where "[i]f an employee believes he/she has been incorrectly identified as being on the OIG-LEIE and/or GSA-SAM lists, the employee may appeal the decision."  McAleer, Swedish's compliance director, testified that the appeals process provision is not to allow employees to attempt to remove themselves from an exclusion list, and

_____

[9] Language of the Policy narrows applicability to federal exclusion lists.  The parties agree that the excluded provider list Cahill appeared on is a list maintained by the Washington Health Care Authority, a state agency.

therefore either seek reinstatement or avoid termination, but only to demonstrate that they are not the individual identified on the list. Cahill does not dispute that she was on the HCA exclusion list, therefore there was no breach of specific treatment under the Policy.

III.    Cost Award

Finally, Cahill argues the trial court erred by awarding Swedish costs not authorized by statute. She argues the court erred by (1) awarding court reporter attendance fees, (2) awarding fees for depositions not introduced at the summary judgment stage, (3) failing to prorate costs, and (4) allowing costs for invoices from plaintiff's expert.

This court engages in a two-step process in reviewing a cost award. Estep v. Hamilton, 148 Wn. App. 246, 259, 201 P.3d 331 (2008).[10] The court first reviews de novo whether a statute authorizes the award, then reviews the amount of the award under an abuse of discretion standard. Id. Cahill first contends the court improperly awarded Swedish fees separately under CR 68 and RCW 4.84.010. This court has consistently held, in published and unpublished opinions, that CR 68 delineates which party may obtain costs as the prevailing party, while RCW 4.84 governs which costs the party may recover, rather than providing two independent bases for costs.[11] Based on our

---

[10] As a general rule, the individual divisions of this Court of Appeals are not bound by the decisions of the others. In re Pers. Restraint of Arnold, 190 Wn.2d 136, 154, 419 P.3d 1133 (2018). Rather, decisions from other divisions are afforded persuasive authority. Id. Division One of this court has followed Estep on several occasions, and we continue to follow its persuasive analysis. Swedish asks this court to disregard Estep as non-binding authority; we decline to do so.

[11] See, e.g., Sims v. Kiro, Inc., 20 Wn. App. 229, 238, 580 P.2d 642 (1978); Yan v. Pleasant Day Adult Fam. Home, Inc., No. 68976-2-I, slip op. at 20-21 (Wash. Ct. App. Dec. 16,

precedent, Swedish was entitled only to costs delineated by RCW 4.84.010. By submitting a CR 68 offer prior to summary judgment, Swedish set the bar higher in order for Cahill to be the prevailing party; had Cahill been awarded an amount less than the offer, Swedish would have prevailed. Swedish was not entitled to separate awards under CR 68 and RCW 4.84.010. As such, any costs not within the scope of RCW 4.84.010 were incorrectly awarded.

Under RCW 4.84.010, Swedish is entitled to costs associated with "transcription of depositions used . . . on a pro rata basis for those portions of the depositions introduced into evidence." RCW 4.84.010(7). In the context of a summary judgment proceeding, the prevailing party may only recover costs for the depositions "'specifically considered by the trial court.'" Estep, 148 Wn. App. at 260 (quoting Herried v. Pierce County Pub. Transp. Benefit Auth. Corp., 90 Wn. App. 468, 476, 957 P.2d 767 (1998)).

Cahill challenges line items 10, 15, 16, 18, 19, 20, and 21 from the order granting Swedish's costs as not having been introduced by the defendants on summary judgment. Items 15, 16, 20, and 21 were not noted in the order granting summary judgment as filings considered by the trial court and therefore were improperly included in the award to Swedish. Items 10, 18, and 19 were considered by the trial court, but introduced through Cahill (Skuda's declaration) rather than Swedish. However, there is no requirement that the defendant submit the depositions, only that they be considered by the trial court in making

---

2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/689762.pdf; Kelly v. Solano, No. 83042-2-I, slip op. at 3-4 (Wash. Ct. App. June 13, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/830422.pdf.

its ruling. As such, the court did not abuse its discretion in awarding costs for these items.

Cahill next challenges non-prorated court reporter attendance costs (lines 3 and 5),[12] but does not discuss why these were error. She provides no authority for the contention that court reporter fees must be prorated and, without more, we cannot conclude that the court abused its discretion. She finally challenges costs for "invoices" from plaintiff's expert incurred by Swedish for deposing Cahill's expert. The deposition and "testimony" from Cahill's expert Christina Tapia were not considered by the trial court on summary judgment and therefore improperly awarded.

We affirm the summary judgment dismissal of Cahill's claims, but reverse the cost award and remand with instructions to strike line items 15, 16, 20, and 21.

Affirmed in part, reversed in part and remanded.

WE CONCUR:

_____     _____
Coburn, J.                      Mann, J.

---

[12] Cahill challenges these costs as "line items 2 and 6" but the court reporter attendance fees are at line items 3 and 5.