[No. 9946-9-I. Division One. December 30, 1982.]

MARK CROSSMAN, *Appellant,* v. THE BRICK TAVERN, INC., ET AL, *Defendants,* TRIBUNE PUBLISHING CO., *Respondent.*

*Ramon Escure,* for appellant.

*Carl D. Teitge, Sinnitt, Teitge & Sinnitt, Valen Honeywell,* and *Gordon, Thomas, Honeywell, Malanca, Peterson*

*& O'Hern,* for respondent.

DURHAM, A.C.J.—Mark Crossman appeals from a summary judgment in favor of the Tribune Publishing Company dismissing his action for defamation.[1]

On October 28 and 31, 1978, an advertisement was printed in the Tacoma News Tribune, as originally submitted to the paper. It was a promotional ad for The Brick Tavern, a Ruston establishment, inviting the public to "spend Halloween Night" there. Prominently featured in this ad was a pumpkin. The phrase "Mark Crossman is . . ." was written on the left side of the pumpkin.

According to Crossman, at the time this advertisement was placed in the Tribune "there were on the walls of the men's restroom of said tavern, enumerable [*sic*] graffiti defaming Plaintiff's reputation." He claims that similar writings also were on the men's room walls of about 15 other local taverns.[2]

Claiming that his reputation had been damaged by the advertisement, and that he had suffered mental pain, anguish, and emotional distress, Crossman sued The Brick Tavern, the Tribune Publishing Company, and several individuals who allegedly authored the graffiti.[3] The trial court granted the Tribune Publishing Company's motion for summary judgment. It found that the advertisement was not ipso facto defamatory, and that Crossman could "not fill in the [ellipses] or add meaning to the statement by use of extrinsic circumstances surrounding its publica-

---

[1] Defendants Miller, Barker, Sherman, Baurman, and The Brick Tavern are no longer parties to this action.

[2] Crossman cites 15 examples of the graffiti, 14 of which identify him by full name, one by last name only. In sum, these statements accuse Crossman of various homosexual activities and interests.

[3] Any notion that the harm to Crossman had already occurred with the writing of the men's room graffiti is misplaced. A plaintiff's reputation or character is commonly presumed to be good in defamation cases. *Luna de la Peunte v. Seattle Times Co.,* 186 Wash. 618, 626–27, 59 P.2d 753, 105 A.L.R. 932 (1936).

tion". On appeal, Crossman argues that the exclusion of the extrinsic evidence was error.

 Washington has adopted the approach suggested in Restatement of Torts § 614, at 304 (1938) to determine if objectionable words rise to the level of defamation:

"(1) The court determines whether a communication is capable of a defamatory meaning.
"(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

*Purvis v. Bremer's, Inc.,* 54 Wn.2d 743, 753, 344 P.2d 705 (1959).

Under this standard, the facial innocence of a challenged statement may not be dispositive. In some circumstances, a court may look to extrinsic circumstances to decide if the communication is capable of a defamatory meaning.[4] The Supreme Court in *Ziebell v. Lumbermens Printing Co.,* 14 Wn.2d 261, 268, 127 P.2d 677 (1942) explained:

In determining how the recipients would understand the words used, account may be taken of the circumstances under which they were published in so far as they were known to the recipients. It is proper to allege in the complaint that the words were published of and concerning the plaintiff and with reference to extrinsic circumstances, upon which their peculiar applicability to the plaintiff depends. Words which are harmless in themselves may be defamatory in the light of surrounding circumstances. 3 Restatement of the Law of Torts, pp. 149, 150, § 563, comments e, f; 33 Am. Jur. 99, § 85.

*See* 50 Am. Jur. 2d *Libel and Slander* § 407, at 927 (1970). *See also Ward v. Painters' Local 300,* 41 Wn.2d 859, 864, 252 P.2d 253 (1953).

Crossman cites *Purvis, Ziebell,* and *Ward* to illustrate

---

[4]Defendant argues that this case is best analyzed by considering the common law distinction between libel *per quod* and libel *per se.* This differentiation was rejected by the Washington Supreme Court in *Pitts v. Spokane Chronicle Co.,* 63 Wn.2d 763, 770–71, 388 P.3d 976, 9 A.L.R.2d 550 (1964). Therein, the court adopted Restatement of Torts § 569 (1938), which provides for liability without proof of special harm (libel *per quod* previously required this). *See* Restatement of Torts § 569, comment *b* (1938).

when extrinsic circumstances may show that a statement is defamatory. In all of these cases, however, the published words already had some intrinsic meaning prior to any consideration of extrinsic factors.[5]

Closer to the issue here is *Pitts v. Spokane Chronicle Co.,* 63 Wn.2d 763, 765, 388 P.2d 976, 9 A.L.R.3d 550 (1964) where the newspaper printed the following: "Brief City News—Records", "Divorce Granted", "Hazel M. Pitts from Philip Pitts". In fact, the Pittses had been divorced 15 months earlier and were merely involved in a custody modification hearing. Mr. Pitts had remarried in the interim, and brought suit against the Chronicle claiming that the erroneous article implied that his second marriage was illegal, and that he was a bigamist. The Supreme Court affirmed the use of extrinsic circumstances, explaining:

> As is noted above, we are dealing here with words which are in themselves harmless, but, taken in the light of extrinsic circumstances can well be taken to be defamatory. In many cases, words which are innocent, if considered alone, have been held to be defamatory by reason of extrinsic facts even though such facts were unknown to the publisher. 33 Am. Jur., Libel and Slander § 85; *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190, 50 S.E. 68; *Hughes v. Samuels Bros.,* 179 Iowa 1077, 159 N.W. 589; *Sydney v. Macfadden Newspaper Pub. Corp.,* 242 N.Y. 208, 151 N.E. 209, 44 A.L.R. 1419; *Madison v. Bolton,* 234 La. 997, 102 So. (2d) 433.

*Pitts,* at 767.

Crossman argues that the news item in *Pitts* was harmless on its face, as was the statement "Mark Crossman is

---

[5]For example, in *Purvis v. Bremer's, Inc.,* 54 Wn.2d 743, 745–46, 344 P.2d 705 (1959), a newspaper advertisement explicitly stated about a political candidate: "'TAXPAYERS BEWARE RALPH PURVIS IS TRYING TO PUT HIS HAND IN YOUR POCKET'". It then went on in great detail to explain how Purvis allegedly was going to misuse public funds. In *Ziebell v. Lumbermens Printing Co.,* 14 Wn.2d 261, 263–65, 127 P.2d 677 (1942), a newspaper advertisement made extended allegations about wrongdoings by the plaintiff. In *Ward v. Painters' Local 300,* 41 Wn.2d 859, 862, 252 P.2d 253 (1953), remarks were made by defendant to union members that plaintiff had embezzled and misappropriated union funds and that he "'stole your money and my money.'"

. . .", and, therefore, he should have been allowed to present extrinsic circumstances. We, however, see a critical difference.

In *Pitts,* the news article appears harmless, but is, in fact, defamatory. The extrinsic circumstances merely explain why. Here, the phrase "Mark Crossman is . . ." has no meaning, defamatory or otherwise. Regardless of whatever extrinsic circumstances might be added; *i.e.,* the graffiti, that phrase remains a nullity.

Thus, we hold that while extrinsic circumstances may be introduced to explain why a given statement has defamatory meaning, they may not be used when the questioned phrase is incapable of meaning.

Affirmed.

RINGOLD and SCHOLFIELD, JJ., concur.