# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LANE ELLEN TOLLEFSEN, a Washington resident,<br><br>Appellant,<br><br>v.<br><br>GREGORY L. JANTZ and LAFON JANTZ, husband and wife, and their marital community; MICHAEL GURIAN and "JANE DOE" GURIAN, husband and wife, and their marital community; ANN MCMURRAY and "JOHN DOE" MCMURRAY, husband and wife, and their marital community; RANDOM HOUSE LLC, a Delaware limited liability company; and CARRIE ABBOTT and "JOHN DOE" ABBOTT, husband and wife, and their marital community,<br><br>Respondents. | No. 75117-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br>FILED: August 7, 2017 |

TRICKEY, A.C.J. — Lane Tollefsen appeals the trial court's order granting Dr. Gregory Jantz and other defendants summary judgment on her defamation and outrage claims. She argues that she produced evidence sufficient to raise a genuine issue of material fact for each element of her claims. Because Tollefsen failed to raise a genuine issue of material fact whether Dr. Jantz's comments were capable of a defamatory meaning and whether his conduct was outrageous, we affirm.

## FACTS

Tollefsen was a teacher at King's Elementary School in Seattle, Washington for many years. King's Elementary is part of CRISTA, a group of Christian ministries. Many in the school community listen to KCIS, a CRISTA radio station. Dr. Jantz was a prominent figure in the CRISTA community. Dr. Jantz is a psychologist and best-selling author.

In the fall of 2010, Dr. Jantz's son, Gregg Jantz Jr., was a student in Tollefsen's sixth grade class.[1] Gregg was disruptive in class and exhibited serious behavioral issues. Tollefsen's efforts to help Gregg improve his behavior made no difference.

In November, Tollefsen raised her concerns about Gregg's behavior at a parent-teacher conference with the Jantzes. She recommended that Dr. Jantz and his wife have Gregg tested for "attention and focus" problems so that Tollefsen might be able to understand Gregg's learning style and adapt to his needs.[2] The Jantzes reacted hostilely and blamed Gregg's problems on Tollefsen's teaching.

Tollefsen did not see the Jantzes again until just before Gregg's class's Christmas party in December. Mrs. Jantz arrived more than half an hour early for the party, while Tollefsen was still conducting class. Tollefsen asked Mrs. Jantz to come back in 30 minutes, which she did.

After Christmas vacation, Mrs. Jantz accused Tollefsen of yelling at her in front of the class and insisted that the school transfer Gregg to another teacher.

---

[1] For ease of reference, we refer to the son as Gregg and the father as Dr. Jantz. We intend no disrespect.
[2] Clerk's Papers (CP) at 79.

2

King's Elementary removed Gregg from Tollefsen's class. Because it was very rare for King's Elementary to remove a student from a teacher's class, the incident was well-known among the school's administrators, other teachers, and students' parents.

In October 2013, Dr. Jantz appeared on the KCIS radio show "Legacy Out Loud" to discuss his new book, *Raising Boys by Design: What the Bible and Brain Science Reveal About What Your Son Needs to Thrive*.[3] Dr. Jantz mentioned that, when his "oldest" son was in sixth grade, his teacher had suggested he might have attention issues.[4] Dr. Jantz had asked his son to count, for a few days, how many boys in his class had to take a pill for attention issues "in front of the teacher" every morning.[5] Tollefsen learned about the radio show when another teacher sent her a text message about it.

Later that month, Dr. Jantz distributed free copies of *Raising Boys by Design* to all the teachers and administrators at King's Elementary. Another teacher at the school showed Tollefsen a passage from the book. In it, Dr. Jantz recounted a scene similar to the one he had described on the radio:

> The tipping point toward looking at the design of boys for the sake of my sons came soon after my oldest – my namesake, Gregg – started sixth grade at a new school. One day he reported a weird thing that had caught his attention. At the start of each day, a line of boys paraded up to the teacher's desk and took some sort of pill. . . . The only conclusion I could draw was these boys were being medicated, probably with Ritalin or a similar drug, probably for ADD or ADHD.[6]

---

[3] CP at 196, 278.
[4] CP at 196.
[5] CP at 196.
[6] CP at 304.

3

Tollefsen burst into tears when she read the passage. Since then, she has suffered bouts of depression, insomnia, headaches, high levels of stress, and was prescribed anti-depression medications.

Tollefsen has never given medication to any of her students. King's Elementary has a designated person administer medication.

In April 2014, Tollefsen served Dr. Jantz, Mrs. Jantz, Michael Gurian, "Jane Doe" Gurian, Ann McMurray, "John Doe" McMurray, and Random House LLC (collectively, Jantz), with a complaint for defamation and outrage.[7, 8] Tollefsen did not file the complaint.

In May 2014, Jantz's counsel provided Tollefsen with a proposed statement, which included Tollefsen's name, to clarify his remarks. On May 21 and 23, 2014, Legacy Out Loud aired a prerecorded version of Dr. Jantz's clarifying statement. This one did not mention Tollefsen's name.

The statement referred to the October 2013 broadcast by date and subject, and explained that a teacher was suing Dr. Jantz because she, the teacher, believed that Dr. Jantz had "falsely accused her of distributing a controlled substance to boys and therefore engag[ing] in criminal acts."[9] Dr. Jantz clarified that neither he nor his co-authors

> intended to imply that any teacher had engaged in any criminal activity whatsoever, nor [did he] have any reason to believe any teachers did. [He] believed, and expected readers and listeners to

---

[7] Gurian is Dr. Jantz's co-author and Random House published Jantz's book. McMurray assisted with editing and writing portions of the book.

[8] Tollefsen sometimes refers to this as "intentional/negligent infliction of emotional distress" and sometimes refers to it as the tort of outrage. "'Outrage' and 'intentional infliction of emotional distress' are synonyms for the same tort." Kloepfel v. Bokor, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003).

[9] CP at 199.

4

believe, that the medication was legally prescribed and parents had authorized this conduct in school.[10]

In July 2014, Tollefsen filed the complaint against Jantz, adding this clarifying statement as a third defamatory statement. This time she added Carrie Abbott, the host of Legacy Out Loud, and "John Doe" Abbott as defendants.

In January 2016, Jantz moved for summary judgment, which the trial court granted. Tollefsen appeals.

## ANALYSIS

### Summary Judgment

Tollefsen argues that the trial court erred by granting Jantz's motion for summary judgment on her defamation and outrage claims because she raised genuine issues of material fact for both. We disagree. Summary judgment was proper because Tollefsen failed to raise a genuine issue of material fact that the statements were defamatory and that Dr. Jantz's conduct was outrageous.

Summary judgment is appropriate if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When the moving party is the defendant, she "bears the initial burden of showing the absence of an issue of material fact." Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party carries its initial burden, the burden shifts to the plaintiff, who will bear the burden of proof at trial. Young, 112 Wn.2d at 225. If the plaintiff fails to "'establish the existence of an element essential to [its] case,' . . . the trial court should grant the motion." Young, 112 Wn.2d at 225 (quoting

---

[10] CP at 199.

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Appellate courts review summary judgment decisions de novo. Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007). We may affirm on any basis supported by the pleadings and proof in the record. LaMon v. Butler, 112 Wn.2d 193, 201, 770 P.2d 1027 (1989).

*Defamation*

As an initial matter, the parties disagree about what standard of proof applies. Tollefsen argues that she needs to establish each element only by a preponderance of the evidence. Jantz maintains that Tollefsen must prove each element by evidence of convincing clarity. This is an open question in Washington. See Mohr v. Grant, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). But we do not need to determine the answer to resolve this case because Tollefsen cannot meet her burden under either standard. Accordingly, we analyze Tollefsen's claims assuming that she has to meet only the preponderance of the evidence standard.[11]

To prevail at summary judgment, Tollefsen needed to show that a genuine issue of material fact existed for the following elements: "falsity, an unprivileged communication, fault, and damages." Mohr, 153 Wn.2d at 822. The statement must be "a false and defamatory statement concerning another." Sims v. KIRO, Inc., 20 Wn. App. 229, 233, 580 P.2d 642 (1978). We conclude that Tollefsen's defamation claims were properly dismissed on summary judgment because she

---

[11] Because of our resolution of this issue, we do not address Tollefsen's argument that applying the wrong standard at summary judgment would violate her constitutional right to a jury trial.

did not raise a genuine issue of material fact whether the statements were defamatory.

*Concerning Tollefsen*

Tollefsen argues that Dr. Jantz's statements concerned her because part of Dr. Jantz's audience would know they were about her. Jantz argues that the statements do not concern Tollefsen because they do not identify her by name, gender, or school, and that Tollefsen's only evidence that members of his audience identified her from the statements alone was inadmissible. We agree with Tollefsen because she provided evidence from which a jury could infer that members of the King's Elementary community recognized her as the subject of Dr. Jantz's allegedly defamatory statements.

The "identification of the plaintiff as the person defamed" in a statement "must be certain and apparent from the words themselves." Sims, 20 Wn. App. at 234. The statement does not need to mention the plaintiff's name if the audience "will conclude from a perusal of the [statement] that the plaintiff is the one against whom publication is aimed." Sims, 20 Wn. App. at 234. For example, courts have held that a broadcast that displayed and criticized a plaintiff's advertisement identified a plaintiff and that a statement that named a cafe identified the owners of the cafe. Sims, 20 Wn. App. at 235-36 (citing Young v. New Mexico Broad. Co., 60 N.M. 475, 477-78, 292 P.2d 776 (1956); Wilson v. Sun Publ'g Co., 85 Wash. 503, 516, 148 P. 774 (1915)).

In Sims, the owner of a store that sold bicentennial merchandise sued a television station for defamation based on its telecast criticizing purveyors of

7

counterfeit bicentennial merchandise. 20 Wn. App. at 231-33. The telecast included footage of the building in which the plaintiff's store was located and close-ups of merchandise in his store, but did not show the plaintiff or the outside of his shop. Sims, 20 Wn. App. at 231. The court held that the telecast gave rise to "no more than conjecture" about whom the telecast was made. Sims, 20 Wn. App. at 235.[12]

Here, Dr. Jantz's book identified Dr. Jantz himself, his son Gregg, and Gregg's grade at the time of the anecdote. His broadcast does not identify Gregg by name, but identifies Gregg as Dr. Jantz's "oldest" son and his year in school at the time of the anecdote.[13] The statements also mention that the teacher in question, or at least the school administrators, had suggested to Dr. Jantz that his son should be tested for attention issues. They do not identify Tollefsen by her name, gender, or the name of the school and do not say what year the incident took place. The clarification identifies Tollefsen as female but does not say which of Dr. Jantz's sons told him the story, how old his son was at the time, or that the teacher had suggested Dr. Jantz have his son tested for attention issues.

Tollefsen argues that the statements identify her because Dr. Jantz's intended audience included members of the King's Elementary community, who were familiar with her negative interactions with the Jantzes. Because Dr. Jantz gave free copies of his book to the teachers and administrators at King's

---

[12] The court in that case was applying a "convincing clarity" standard to each element. Sims, 20 Wn. App. at 235. But evidence must be more substantial than a "mere conjecture" to satisfy the preponderance of the evidence standard, even at summary judgment. See Miller v. Likins, 109 Wn. App. 140, 145, 34 P.3d 835 (2001).
[13] CP at 196.

Elementary, it is a fair inference that the school was part of Dr. Jantz's target audience. Tollefsen argues that the King's Elementary community could recognize her in the passages because her dispute with the Jantzes over whether Gregg should be tested for attention issues was well-known. Tollefsen's declaration states that Gregg's removal from her class was well-known because it was an "extraordinary occurrence."[14]

Tollefsen also presented evidence that one of her colleagues drew her attention to Dr. Jantz's radio broadcast and another drew her attention to the specific passage of the book at issue.[15] These actions, combined with Tollefsen's interactions with the Jantz family, are sufficient to give rise to an inference that some people who read the book or heard the broadcast could identify Tollefsen as the subject.

We conclude that Tollefsen has created a genuine issue of material fact whether the statements concerned her.

*Falsity*

Tollefsen argues that she has shown the statements were false because she declared that she never administered medicine to her students. Jantz contends that, regardless of whether Tollefsen gave her students medicine, the

---

[14] CP at 79.
[15] Tollefsen also asserts that the teachers told her they believed the two statements were about her. Jantz argues that these statements are inadmissible because they are hearsay. Hearsay is an out-of-court statement admitted for the truth of the matter asserted, and is generally inadmissible. ER 801(c); ER 802. A plaintiff cannot rely on inadmissible evidence at summary judgment. CR 56(e). But, even assuming the statements themselves are hearsay, the teachers' acts of bringing the radio show and book to Tollefsen's attention are not. Those acts are evidence that Tollefsen can use to support her claims.

9

statements that Gregg told Dr. Jantz that Tollefsen had given her students medicine is true. Jantz argues that Tollefsen has not raised a genuine issue of material fact for this element because she has not offered any proof that Gregg did not tell Dr. Jantz the story. We agree with Tollefsen.

A statement meets the test for falsity if it "falsely expresses or implies provable facts, regardless of whether the statement is, in form, a statement of fact or a statement of opinion." Schmalenberg v. Tacoma News, Inc., 87 Wn. App. 579, 590-91, 943 P.2d 350 (1997). The statement may be false because it "falsely describes the act, condition or event that comprises its subject matter." Schmalenberg, 87 Wn. App. at 591. For example, "if Doe says, 'I think Smith said that Jones lied about the accident,' the statement may be false . . . because Jones did not lie about the way in which the accident happened." Schmalenberg, 87 Wn. App. at 591.

Here, in each of the allegedly defamatory statements, Dr. Jantz stated that his son saw students take pills in his teacher's classroom. Moreover, Dr. Jantz implied that his son's story was true by asserting, in each instance, that the other students were probably receiving medication for attention issues. Thus, Dr. Jantz implied that Tollefsen's students took medicine for attention issues in her classroom.

Tollefsen says that she never administered medicine to any students in her classroom and that the person designated to administer medication did so in the school's office. A reasonable jury could infer from Tollefsen's statements that no one ever administered any medicine in her classroom. Thus, any statement that

10

implied students had taken medicine in her classroom would be false.

We conclude that there is a genuine issue of material fact whether Dr. Jantz made false statements.

*Defamatory Character*

Tollefsen argues that the statements were defamatory because they suggested she was violating King's Elementary's rules and engaging in criminal activity by distributing controlled substances to minors. Because nothing in the statements asserts or implies that Tollefsen is violating the law or school rules, we disagree.

To be defamatory, the statements must present "a substantial danger to the plaintiff's personal or business reputation." Ernst Home Ctr., Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO, Local 1001, 77 Wn. App. 33, 44, 888 P.2d 1196 (1995). "'A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 382, 46 P.3d 789 (2002) (quoting RESTATEMENT (SECOND) OF TORTS § 559 (1977)).

Ordinarily, the "defamatory character of the language used must be certain and apparent from the words themselves." Sims, 20 Wn. App. at 234. But, sometimes, statements that "are harmless in themselves may be defamatory in the light of surrounding circumstances." Ziebell v. Lumbermens Printing Co., 14 Wn.2d 261, 268, 127 P.2d 677 (1942). In those cases, it is appropriate for a court to consider extrinsic evidence that would be known to the recipients of the

statements and shows the statements' peculiar applicability to the plaintiff. Crossman v. The Brick Tavern, Inc., 33 Wn. App. 503, 505, 655 P.2d 1206 (1982) (quoting Ziebell, 14 Wn.2d at 268).

In Crossman, the court used the example of a publication that had stated that a man had just become divorced, when, in fact, he had been divorced for 15 months. 33 Wn. App. at 506 (citing Pitts v. Spokane Chronicle Co., 63 Wn.2d 763, 765-67, 388 P.2d 976 (1964)). The court considered, as extrinsic evidence, that the man had married another woman in the meantime. Crossman, 33 Wn. App. at 506. Thus, the seemingly innocent statement that he had just been divorced could imply that he was a bigamist to people who knew about the recent marriage. Crossman, 33 Wn. App. at 506.

False information can also cause defamation by implication. See Herron v. KING Broad. Co., 112 Wn.2d 762, 772, 776 P.2d 98 (1989). For example, in Herron, a broadcast falsely claimed that Don Herron, the County Prosecutor, had received "approximately half of all" of his campaign contributions from bondsmen. 112 Wn.2d at 765 (italicization omitted). The court found that the false statement created an implication that "Herron had bargained away his ethics and integrity in exchange for campaign contributions." Herron, 112 Wn.2d at 772.

The court must decide whether statements are "capable of a defamatory meaning" as a matter of law. Ernst Home Ctr., 77 Wn. App. at 44. If the statements are capable of defamatory meaning, it is a question for the jury whether recipients of the statements understood them to be defamatory. Crossman, 33 Wn. App. at 505 (quoting Purvis v. Bremer's, Inc., 54 Wn.2d 743, 753, 344 P.2d 705 (1959)).

Here, Dr. Jantz's statements falsely claim that someone administered medicine for attention issues to Tollefsen's students in the front of her classroom. Tollefsen argues that, if the statements were true and about her, she would be in violation of school policy. She provided King's Elementary's policy about medication and a reminder the school sent to families to show that the policy would be known to the school community. King's Elementary's policy allows the school nurse or a "designated staff member" to administer the medicine.[16]

Dr. Jantz's statements do not state or imply that Tollefsen was violating the school policy, even assuming that the audience was familiar with it. If anything, the statements imply that this was normal and appropriate conduct. In the radio broadcast, Dr. Jantz prefaces his anecdote with "in elementary school when the kids are on medication, they *usually* have to take them in front of the teacher."[17] In the book, Dr. Jantz immediately follows the anecdote with a comment that the "school administrators" advised him to consider putting his son on medication.[18] In his clarification, Dr. Jantz states explicitly that he "believed, and expected readers and listeners to believe, that the medication was legally prescribed and parents had authorized this conduct in school."[19]

Put in context, the statements are not capable of implying that Tollefsen was violating school policy. Tollefsen has not presented any evidence to suggest that Dr. Jantz's audience would know whether King's Elementary had designated

---

[16] CP at 85.
[17] CP at 196 (emphasis added).
[18] CP at 304.
[19] CP at 199.

her to administer the medicine. None of the statements imply that the school administration disapproved of or disagreed with what the teacher was doing.

Tollefsen also argues that the statements are defamatory because, if true, they would imply that she was illegally distributing controlled substances to minors. Washington law allows schools to administer medication in the manner authorized by King's Elementary. RCW 28A.210.260. Apparently, Tollefsen's argument is that, if she administered medicine to students without authorization from King's Elementary, she would be violating Washington law. As just explained, nothing in Dr. Jantz's statements implies that King's Elementary did not authorize her conduct. Thus, Dr. Jantz's statements do not imply that she is violating Washington law.

Moreover, although Tollefsen repeats throughout her brief that she could be subject to "criminal charges" for this deviation from the school policy, she does not cite any authority for that proposition.[20] When a teacher administers medicine in substantial compliance with RCW 28A.210.260, she is immune from civil or criminal liability that might otherwise attach to her distribution of the medicine. RCW 28A.210.270(1). Nothing in RCW 28A.210.260, the only statute Tollefsen cites to support her criminal charges argument, suggests that any violation of the statute is a crime.

We conclude that, as a matter of law, Dr. Jantz's statements are not capable of defamatory meaning.

In short, because Tollefsen has not met her burden to show that Dr. Jantz's

---

[20] Br. of Appellant at 32, 34, 38, 42, 44.

14

statements were defamatory, her defamation claim must fail. See Mohr, 153 Wn.2d at 830. Accordingly, we do not examine whether Tollefsen could raise a genuine question of material fact that the statements were not privileged, that Dr. Jantz made them negligently, or that she suffered damages.

*Outrage*

Tollefsen argues that the trial court erred by granting Jantz's motion for summary judgment on her outrage claim because she demonstrated that there were genuine issues of material fact for each element. We disagree because Dr. Jantz's conduct was not extreme or outrageous.

The tort of outrage requires proof of the following elements:

(1) extreme and outrageous conduct,
(2) intentional or reckless infliction of emotional distress, and
(3) actual result to plaintiff of severe emotional distress

Kloepfel v. Bokor, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). "Liability exists 'only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'*" Grimsby v. Samson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975) (quoting RESTATEMENT (SECOND) TORTS § 46, cmt. d).

Here, in a book about educating boys, Dr. Jantz included an anecdote about a classroom experience his son described to him. Dr. Jantz described the same conduct on a radio show, while promoting the book. Tollefsen argues that Dr. Jantz's conduct was outrageous because, in order to boost sales of his book, he included a fabricated story, which he recounted on the radio show, and thereby recklessly exposed her to criminal charges and discipline at work.

15

For the same reasons discussed above, Tollefsen has not demonstrated that Dr. Jantz exposed her to any risk of school discipline or criminal prosecution. No reasonable jury could conclude that Dr. Jantz's conduct was utterly intolerable in a civilized community or went beyond all bounds of decency. Tollefsen has not raised a genuine issue of material fact whether Dr. Jantz's conduct was outrageous or extreme. Thus, we conclude that the trial court properly dismissed Tollefsen's outrage claim.

We affirm the trial court's grant of summary judgment on all claims to Jantz.

Trickey, A.C.J.

WE CONCUR:

Spearman, J.

Dwyer, J.