IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SIGN HERE PETITIONS LLC, *Plaintiff/Appellant*,

*v.*

ANDREW D. CHAVEZ, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0363
FILED 8-29-2017

Appeal from the Superior Court in Maricopa County
No.  CV2015-091483
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED**

COUNSEL

Law Offices of Paul Weich, Tempe
By Paul M. Weich
*Counsel for Plaintiff/Appellant*

Coppersmith Brockelman PLC, Phoenix
By Roopali H. Desai, D. Andrew Gaona
*Counsel for Defendants/Appellees*

---

## OPINION

Judge Paul J. McMurdie delivered the opinion of the Court, in which Presiding Judge Kent E. Cattani and Judge Jon W. Thompson joined.

---

**M c M U R D I E**, Judge:

**¶1** Sign Here Petitions, LLC ("Sign Here") appeals from a judgment dismissing, with prejudice, all claims against Andrew D. Chavez, Petition Partners, LLC, and AZ Petition Partners, LLC ("Petition Partners") and the denial of Sign Here's post-judgment motion. We affirm and hold when ruling on a motion for summary judgment in a defamation case: (1) the superior court must act as gatekeeper protecting the right to free speech from meritless litigation to avoid a chilling effect on free expression; (2) in that role, before allowing a defamation claim to proceed to trial, the superior court must first determine whether a statement is capable of bearing a defamatory meaning by considering all of the circumstances surrounding the statement; and (3) in doing so, the superior court is to evaluate the circumstances surrounding an allegedly defamatory statement from the point of view of a reasonable person.

### FACTS AND PROCEDURAL BACKGROUND

**¶2** Sign Here and Petition Partners are in the business of collecting voter signatures on petitions proposing ballot measures in Arizona. Each also engages in "suppression" of signature-gathering efforts. Chavez is a managing member of Petition Partners. Chavez participates in social media websites, such as Twitter and Facebook, to promote his businesses. Approximately 1000 people followed Chavez on Twitter in November 2015.

**¶3** In late 2014, Sign Here conducted a signature drive on behalf of Citizens for Fair Dealing to place a zoning referendum measure on the ballot in the City of Phoenix. In December, 2014, the city clerk found the referendum petition insufficient because it lacked the required 16,987 valid signatures to qualify. While Sign Here provided 20,172 signatures, only 12,659 of those signatures were valid, a failure rate of almost 40%. The failure rate was based in part on Sign Here's use of two convicted felons to gather signatures. The City disqualified all signatures gathered by those two circulators because they were ineligible to circulate petition sheets, invalidating 714 signatures. Sign Here's managing member, Bonita Burks,

stated in 2015 that Sign Here conducted criminal background checks on potential circulators, but she acknowledged the disqualified felons passed their background checks.

¶4        It is undisputed that the total amount Sign Here was to be paid on the Cholla referendum contract with Citizens for Fair Dealing was approximately $71,000. Citizens for Fair Dealing withheld approximately $17,000 of that amount because of a dispute with Sign Here related to the terms of, and performance under, the contract.

¶5        Chavez published several statements on his Twitter account about Sign Here's signature collection effort. In March 2015, Sign Here filed a complaint against Chavez and Petition Partners, alleging Chavez's Twitter postings defamed Sign Here. The tweets posted on Chavez's account included the following statements:

> September 24, 2014: "Rivals ready for referendum on #Phoenix 19thAve and Cholla Castle renovation project. Expensive pissing match begins on Thursday Oct. 3rd."

> November 14, 2014: "Phx 19thAve/Cholla referendum failure eminent. If so, it's 38th of 38 municipal projects across country we worked against to fail this year."[1]

> November 25, 2014 (two tweets): (1) "The first and only project Sign Here Petitions attempted to qualify on their own will fail. #Phx 19th Ave Castle Referendum is a disaster"; and (2) "#PHX 19th/Cholla Referendum will fail b/c of bad signatures. Company that failed in hot water for using felons. @petitionpartner wins again."

---

[1]        Although raised in its complaint and addressed by Petition Partner's motion for summary judgment, Sign Here did not discuss the September 24, 2014, and November 14, 2014, postings in its appellate brief. Sign Here has therefore waived review of these statements. *See City of Phoenix v. Fields*, 219 Ariz. 568, 573, ¶ 23 (2009) ("Generally, we do not address arguments raised in the trial court but not in the court of appeals."); *State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.").

December 11, 2014: "To date more than 1/3 of sigs collected by Sign Here Petitions are suspected of being collected by felons. Bad gets worse on #phx referendum."

January 23, 2015: "Phx 19th Ave/Cholla Referendum failure official today. $100k+ spent w/ Sign Here Petitions who delivered less than 1/2 valid sigs necessary."

**¶6**          Petition Partners moved for summary judgment arguing the six tweets were incapable of defamatory meaning, any claim relating to other unidentified statements was time-barred, the claim of tortious interference was unsupported by a single fact, and the measure of damages (the $17,000 withheld by its client) was unrelated to statements or actions by Petition Partners. The superior court granted the motion and dismissed the case with prejudice.

**¶7**          Petition Partners filed a Motion for Relief from Judgment per Arizona Rule of Civil Procedure 60(c), taking issue with two tweets Chavez posted after the grant of summary judgment:

(1) "ICYMI: Judge dismisses case against us and our honest tweets about Sign Here Petitions failed signature drive. Good guys win again"; and

(2) "Chicken dinner!"

**¶8**          The superior court denied the post-judgment motion. This timely appeal followed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), and -2101(A)(1).[2]

---

[2]     We cite to the current version of applicable statutes and rules when no revision material to this case has occurred.

## DISCUSSION

¶9        "Freedom of speech 'is the matrix, the indispensable condition, of nearly every other form of freedom.'" *State ex rel. Corbin v. Tolleson*, 160 Ariz. 385, 389 (App. 1989) (quoting *Palko v. Connecticut*, 302 U.S. 319, 327 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784, 794 (1969)).

¶10        The Arizona Constitution grants a broad right to free speech. "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." Ariz. Const. art. 2, § 6. The right to free speech is granted directly to every Arizonan and is not merely a protection against government action, as is the First Amendment to the United States Constitution. *Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n*, 160 Ariz. 350, 354 (1989). Where the guarantees of the Arizona Constitution are in question, "we first consult our constitution." *Mountain States*, 160 Ariz. at 356; *see Phoenix Newspapers, Inc. v. Jennings*, 107 Ariz. 557, 559 (1971) (the United States Constitution applied but "[a]rticle II of the Arizona Constitution [was] sufficient to resolve the litigation"); *see also Phoenix Newspapers, Inc. v. Super. Ct.*, 101 Ariz. 257, 259 (1966) (where ban on publication violated the Arizona Constitution, the court did "not reach the further questions presented concerning the application of the First and Fourteenth Amendments of the Federal Constitution").

¶11        Because this case raises issues concerning the right to free speech, we conduct an "enhanced appellate review" to assure "the foregoing determinations will be made in a manner so as not to constitute a forbidden intrusion of the field of free expression." *Turner v. Devlin*, 174 Ariz. 201, 202, 204 (1993) (internal quotation omitted) (quoting *Yetman v. English*, 168 Ariz. 71, 75–76 (1991)). "The framers of our constitution did not give our judges authority to censor speech or decide how much speech the constitution allows." *Mountain States*, 160 Ariz. at 357 (citing *Phoenix Newspapers*, 101 Ariz. at 259). Instead, judges are responsible for upholding and enforcing those rights. *Id.*

A.    **The Superior Court Did Not Err by Granting the Motion for Summary Judgment.**

¶12        Sign Here argues the superior court erred by granting summary judgment in favor of Chavez and Petition Partners because (1) the defamatory statements were "indisputably false and actionable"; and (2) there were disputed underlying facts relating to Petition Partners' defense of substantial truth.

¶13        On appeal from a summary judgment, we view the facts in the light most favorable to the party against whom judgment was granted, *Riley, Hoggatt & Suagee, P.C. v. English*, 177 Ariz. 10, 12–13 (1993), and "determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180 (App. 1997). We will affirm the superior court's grant of summary judgment if it is correct for any reason. *See City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14 (App. 2001).

¶14        To defeat a defendant's motion for summary judgment in a defamation case, the plaintiff must present evidence "sufficient to establish a prima facie case with *convincing clarity*." *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 356–57 (1991) (emphasis added). We place a higher burden on the plaintiff to show a triable issue because the expense of defending a meritless defamation case could have a chilling effect on free speech. *Id.* at 357.

¶15        Under Arizona common law, a defamatory publication by a private figure on matters of private concern "must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach [that person]'s honesty, integrity, virtue, or reputation." *Turner*, 174 Ariz. at 203–04 (quoting *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989)); *see also Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 481 (1986) ("[W]hen a plaintiff is a private figure and the speech is of private concern, the states are free to retain common law principles.").

¶16        Under federal law, "the core notion of commercial speech [is] speech which does no more than propose a commercial transaction." *Tolleson*, 160 Ariz. at 392 (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561–62 (1980). "The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Id.* at 562–63 (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456–57 (1978)). Arizona courts have yet to decide, however, whether the evaluation of commercial and non-commercial speech requires a different standard under the Arizona Constitution's free speech provision. *Salib v. City of Mesa*, 212 Ariz. 446, 454, ¶ 25 (App. 2006); *see also Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 614 (9th Cir. 1993). Nor do we have to in this case.

¶17        Here, a private person, a business, sued another private person for statements made by that person in two capacities: as an individual and as a business representative. Although Chavez's statements

do not expressly propose a commercial transaction, *see Tolleson*, 160 Ariz. at 392, their purpose could be understood to advertise Petition Partners' services to potential clients, thus effectively proposing a commercial transaction. But, "[w]hen speech has a mixture of commercial and non-commercial elements, the presence of the former does not diminish the constitutional protection of the whole*." Id.* at 390. Therefore, we apply our test for fully protected speech. *Id.* ("[W]here, as here, the component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical.") (quoting *Riley v. Nat'l Fed. of the Blind of North Carolina*, 487 U.S. 781, 796 (1988)).

**¶18**        Applying the test for fully protected speech, we first analyze whether a genuine factual dispute exists regarding the defamatory meaning of Chavez's statements, and then review the superior court's ruling as a matter of law, employing an enhanced appellate review for both steps. *See Turner*, 174 Ariz. at 204.

> **1.        Chavez's Statements Did Not Create a Genuine Factual Dispute Because They Were Not Capable of Bearing a Defamatory Meaning.**

**¶19**        Sign Here argues summary judgment was improper because reasonable people could disagree whether Chavez's statements were capable of defaming Sign Here, and thus a jury should have decided whether a defamatory meaning was in fact conveyed.

**¶20**        In *Yetman*, our supreme court described in detail the court's role as a gatekeeper, protecting the right to free speech, and established a two-step process for resolving defamation cases. 168 Ariz. at 79.

**¶21**        First, the court decides "whether, *under all the circumstances*, a statement is capable of bearing a defamatory meaning." *Id.* (emphasis added) (citing Restatement (Second) of Torts § 614 (1977)). "The key inquiry is *whether the challenged expression . . . would reasonably appear to state or imply assertions of objective fact." Id.* at 76. "In making this inquiry, courts cannot stop at literalism. The literal words of challenged statements do not entitle . . . a libel plaintiff to go forward with its action." *Id.* "In determining whether speech is actionable, *courts must additionally consider the impression created by the words used as well as the general tenor of the expression, from the*

*point of view of the reasonable person*" at the time the statement was uttered and under the circumstances it was made. *Id.*[3]

**¶22** Only after the court finds the statement capable of bearing a defamatory meaning based on the impressions created by the words and general tenor, seeing beyond literal words, does the jury decide "whether the defamatory meaning of the statement was in fact *conveyed*." *Yetman*, 168 Ariz. at 79 (emphasis added). On appeal, we review the court's determination of the statement's capability to bear a defamatory meaning *de novo*. *See L. Harvey Concrete, Inc.*, 189 Ariz. at 180.

**¶23** Here, Chavez started his series of statements published on Twitter with an announcement that: "Rivals [are] ready for referendum . . . Expensive pissing match begins . . . ." Chavez then continued with two statements predicting a future result ("the project . . . will fail" and "Referendum will fail b/c of bad signatures"). On their face, these

---

[3] Although *Yetman* addressed the protection the United States Constitution affords to speech, the same gatekeeping function is required by the Arizona Constitution. Because Arizona's declaration of rights "came essentially verbatim from the state of Washington's constitutional convention of 1889," *Mountain States*, 160 Ariz. at 356, n.12 (citing Feldman & Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution*, 20 Ariz. St. L.J. 115, 120–21 (1981)), we have reviewed and concur with Washington's two-step process in protecting the right to free speech from the chilling effects of meritless litigation. In Washington, the issue of "[w]hether the allegedly defamatory words were intended as a statement of fact or an expression of opinion is a threshold *question of law for the court*." *Robel v. Roundup Corp.*, 59 P.3d 611, 622 (Wash. 2002) (emphasis added) (citing *Camer v. Seattle Post-Intelligencer*, 723 P.2d 1195, 1201 (Wash. Ct. App. 1986)). Washington courts determine whether a statement is actionable by considering the "totality of the circumstances" surrounding the statement and "consider at least (1) the *medium* and *context* in which the statement was published, (2) the *audience* to whom it was published, and (3) whether the statement implies undisclosed facts." *Id.* at 622 (emphasis added). Moreover, "[e]ven apparent statements of fact may assume the character of opinions, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, *fiery rhetoric* or hyperbole." *Camer*, 723 P.2d at 1202 (emphasis added) (internal quotations omitted) (quoting *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)).

statements do not "state or imply assertions of objective fact." *See Yetman*, 168 Ariz. at 76. Predictions of the future cannot reasonably be interpreted as statements of objective facts, especially considering the general tenor of commercial puffing between two competitors described by Chavez as an "[e]xpensive pissing match." *See Yetman*, 168 Ariz. at 73–74 (society has an interest in an "uninhibited discussion in . . . economic . . . matters"); *see also Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 561–62 ("Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information."). The superior court properly found these two statements were not actionable as defamation.

¶24 Sign Here next challenged Chavez's statement: "To date more than 1/3 of sigs collected by Sign Here Petitions are suspected of being collected by felons. Bad gets worse on #phx referendum." However, the court's role in protecting the right to free speech required the court not to stop with the literal meaning of words, but rather to "additionally consider the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person." *Yetman*, 168 Ariz. at 76; *Turner*, 174 Ariz. at 208 ("the *context* of Devlin's statements dictates the opposite conclusion" from the one pronounced in *Yetman*, a case "where the evidence supported two tenable views") (emphasis added).[4]

¶25 A reasonable person would understand Chavez's statement in the context of the previous several tweets, which set a tone of puffery and exaggeration, *see Turner*, 174 Ariz. at 208, and as describing subjective impressions expressed by Chavez's use of the word "suspected." The general tenor of the communication was not to report how many felons Sign Here employed, an objective fact, but that it employed some felons. Thus, a reasonable person would understand the essence of the statement to be that Sign Here did not conduct sufficiently diligent criminal background checks when hiring its petition collectors, implying incompetence.

---

[4] In *Yetman*, the defendant referred to the plaintiff as a communist at a 1985 political meeting discussing zoning changes that might have diminished property values. 168 Ariz. at 73. The court concluded the defendant's statements could reasonably be interpreted as either an assertion of fact supported by the record (Yetman was a member of the Communist Party) or as a protected invective or hyperbole aimed at his lack of sensitivity to private ownership, and remanded the case. *Id.* at 79–80.

¶26         We apply a similar analysis to the last statement challenged on appeal: "Phx 19th Ave/Cholla Referendum failure official today. $100k+ spent w/ Sign Here Petitions who delivered less than 1/2 valid sigs necessary." This tweet asserts two potentially disputable facts: the monetary amount spent and the number of valid signatures delivered. But the general tenor of the communication was not to report how much money Sign Here actually spent, or how many valid signatures Sign Here actually collected. Chavez was announcing that Sign Here failed in its efforts to place the referendum on the ballot and that Sign Here did not do a competent job. Because Chavez selected the psychologically significant round numbers of "$100k" and "1/2," while using a plus sign ("$100k+"), Chavez was indicating to the reader he was not reporting the actual or precise amounts. Likewise, conveying the precise numbers was not central to Chavez's message. Chavez was announcing, and exaggerating, a win over Sign Here. Thus, a reasonable person would view the essence of the statement to be that Sign Here spent too much money for too few valid signatures.

¶27         Sign Here disputes the factual accuracy of Chavez's comments. As in *Devlin*, however, the "central debate in this case is not over *what* happened but, instead, how to *characterize* what happened." *Turner*, 174 Ariz. at 206. In *Turner*, the basis of the statements was "indisputably factual." *Id.* at 204.[5] The court concluded, however, that the statements "were nothing more than an assessment of, and attack on, [] manner, demeanor, methods, and interviewing techniques." *Id.* at 208. The record demonstrated the statement's analogy "was unmistakably *exaggeration* used to voice ardent protest against methods—not an assertion of fact." *Id.* (emphasis added) ("'[E]ven the most careless reader' would have perceived [the] description as 'no more than rhetorical hyperbole, a vigorous epithet' used to criticize [the] behavior.") (quoting *Greenbelt Co-op. Pub. Ass'n v. Bresler,* 398 U.S. 6, 14 (1970)). Because Sign Here did in fact hire convicted felons whose civil rights were not restored, fell thousands of signatures short of the required number, and was under contract to be paid approximately $71,000, Chavez's statements were mere exaggerations. His tweet expressed his opinion that Sign Here was expensive and not diligent,

---

[5]         "Devlin's letter stated that (1) Turner 'demanded that the student stand against the wall'; (2) '[t]he student was interrogated as if he, the victim, had committed an illegal act'; (3) '[t]he officer was rude and disrespectful, and his manner bordered on police brutality'; and (4) '[t]here is no excuse for this outdated, uneducated behavior on the part of so important a group as our Police Department.'" *Turner*, 174 Ariz. at 204–05.

competent, or effective. Chavez was "selling" Petition Partners' business acumen over Sign Here's.

¶28        Because Sign Here did not present evidence sufficient to establish a prima facie case of defamation with *convincing clarity*, *see Read*, 169 Ariz. at 356–57, the superior court did not err by finding Chavez's statements incapable of bearing a defamatory meaning.

### 2.    Chavez's Statements Were Substantially True.

¶29        Sign Here contends Chavez's statements were "substantially false" and the court improperly granted summary judgment because the facts underlying the defense of substantial truth were in dispute and because Chavez's statements were not "an unintentional error" but rather an "additional sting" to Sign Here's reputation. We do not agree.

¶30        In an action for defamation, "the truth of the contents of . . . [a] statement is a complete defense." *Read*, 169 Ariz. at 355. To prove the truth, "the defendant need not prove the literal truth of every detail, but must only prove that the statements are substantially true." *Id.* "Slight inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified." *Id.* When the underlying facts are not disputed, "the determination of substantial truth is a matter for the court," which determines whether publishing the literal truth would have made a "material difference to a reader." *Id.*

¶31        Sign Here provided no evidence that the inaccurate statements caused it damages beyond what otherwise resulted from its own inability to deliver the sufficient number of valid signatures. *See Read*, 169 Ariz. at 356 (summary judgment granted in favor of the newspaper was proper although the newspaper inaccurately reported a crime committed by a candidate for a high public office, arguably creating an "excessive sting," when it reported a candidate was convicted of firing a gun after a motorist, while the candidate was actually convicted of displaying a weapon not in self-defense); *see also Fendler v. Phoenix Newspapers Inc.*, 130 Ariz. 475, 480, n.4 (App. 1981) (in an action brought by a convict against a publisher of a story based upon the court's transcript of the proceedings, arguably embellished, the court stated the defendant's statements "did not cause (plaintiff's) 'good name' to be sullied any more than it already had been by the fact of his murder conviction").

¶32        Any damage to Sign Here's reputation arose from its own inability to collect enough valid signatures to place the referendum on the ballot and to fulfill the terms of its contract, for which it was paid a

substantial amount of money. Because it is not disputed that Sign Here contracted to deliver at least 16,987 valid signatures for the payment of approximately $71,000, and because two of the collectors were in fact convicted felons unauthorized to collect signatures, the gist of Chavez's statements was accurate. *See Read*, 169 Ariz. at 355.

¶33        To illustrate the point, if Chavez's tweets had been 100 percent factually accurate, they would have read as follows: "Referendum failure official today. $54k spent w/ Sign Here Petitions [$71k contracted to be spent w/ Sign Here] who delivered less than 3/4 of valid sigs necessary," and "To date some of sigs collected by Sign Here are suspected of being collected by felons." The difference between the actual tweets and the factually accurate tweets would not have made a "material difference" to the reader. *See Read*, 169 Ariz. at 355. Thus, the superior court properly granted summary judgment in favor of Chavez and Petition Partners as a matter of law.

## B.    Motion for Relief Under Rule 60(c)(1) and (6).[6]

¶34        Sign Here further argues the superior court erred by denying its motion for relief because Chavez's statements on social media after the court entered summary judgment brought "additional clarity" to Chavez and Petition Partners' pre-judgment actions and undermined the court's ruling.

¶35        Generally, the superior court has broad discretion when considering motions under Rule 60(c), and we will sustain the superior court's decision unless "undisputed facts and circumstances require a contrary ruling." *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985).

### 1.    Mistake or Excusable Neglect.

¶36        Sign Here asserts the oral argument on the Motion for Summary Judgment should have been continued until after outstanding

---

[6]        Rule 60(c) was re-numbered 60(b) effective January 1, 2017, but is substantively identical to the prior rule. We cite the version in effect during the underlying litigation.

discovery was obtained and that Sign Here's failure to timely request relief under Rule 56(f) was "legally excusable."[7]

**¶37**　　　　The superior court may grant relief due to "mistake, inadvertence, surprise or excusable neglect." Ariz. R. Civ. P. 60(c)(1) (2016). Neglect is excusable "when it is such as might be the act of a reasonably prudent person in the same circumstances." *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 163 (App. 1993) (citation omitted). "Carelessness does not equate with excusable neglect." *Id.* (citing *Almarez v. Super. Ct.*, 146 Ariz. 189, 192 (App. 1985) (neglect was excusable because an attorney's office was following procedures designed to respond timely or when a clerical error occurred); *Daou v. Harris*, 139 Ariz. 353, 359 (1984) ("[I]gnorance of the rules of procedure is not the type of excuse contemplated in rule 60(c) . . . .").

**¶38**　　　　Not only does Sign Here not explain how its neglect was excusable, but the record reflects Sign Here could have timely requested Rule 56(f) relief. Sign Here, however, did not request Rule 56(f) relief and has thus waived the issue on appeal. *See Edwards v. Bd. of Supervisors of Yavapai County*, 224 Ariz. 221, 223–24, ¶ 19 (App. 2010) (failure to request "a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or . . . such other order as is just" pursuant to Rule 56(f) from the superior court resulted in waiver of the issue on appeal) (quoting Ariz. R. Civ. P. 56(f) (2010)).

### 2.　　　Other Reasons Justifying Relief.

**¶39**　　　　Sign Here contends the two post-judgment statements posted by Chavez on Twitter preclude the entry of summary judgment.

**¶40**　　　　The court can grant relief under Rule 60(c)(6) if "extraordinary circumstances of hardship or injustice justify[] relief" and none of the grounds in clauses (c)(1)-(5) would apply. *Davis v. Davis*, 143 Ariz. 54, 57 (1984). The equitable considerations need to outweigh the "public policy favoring finality of judgments." *See Panzino v. City of Phoenix*, 196 Ariz. 442, 448, ¶ 19 (2000).

**¶41**　　　　Contrary to Sign Here's argument, we evaluate Chavez's pre-judgment statements from a reasonable person's viewpoint *at the time*

---

[7]　　　　Effective January 1, 2017, the rule was renumbered 56(d), and amended to incorporate affidavit requirements previously established by Arizona case law. *See* Ariz. R. Civ. P. 56, cmt (2017). We cite the version in effect during the underlying litigation.

*the statements were made. See Yetman*, 168 Ariz. at 76 (whether a comment was actionable was evaluated "'from the point of view of the reasonable person' hearing it at the time and under the circumstances under which it was made"). Thus, the post-judgment statements are not relevant to the perceptions created by Chavez's pre-judgment statements. The court did not abuse its discretion by denying Sign Here's Rule 60(c)(6) request for relief. *See Geyler*, 144 Ariz. at 330.

## C. Attorney's Fees and Costs on Appeal.

**¶42** Petition Partners requests an award of costs and attorney's fees incurred on appeal pursuant to A.R.S. §§ 12-341, -349, and -752(D). We award Petition Partners costs on appeal, but in our discretion, we decline to award attorney's fees.

## CONCLUSION

**¶43** For the reasons stated above, we affirm the superior court's judgment in favor of Chavez and Petition Partners and award Petition Partners costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA